# WILENTZ
# GOLDMAN
# &SPITZER P.A.

DAVID T. WILENTZ (1894-1988)
G. GEORGE GOLDMAN (1922-1959)
HENRY M. SPITZER (1928-1968)

WARREN W. WILENTZ
MORRIS BROWN
FREDERIC K. BECKER[2]
NICHOLAS L. SANTOWASSO
RICHARD F. LERT[2]
JOHN A. HOFFMAN
STEPHEN E. BARCAN
FRANCIS V. BONELLO
BARRY M. EPSTEIN[2,10]
VINCENT P. MALTESE
DAVID M. WILDSTEIN
GORDON J. GOLUM
MARVIN J. BRAUTH[2]
STUART A. HOBERMAN[2,3]
STEPHEN A. SPITZER
ANNE S. BABINEAU[2]
CHRISTINE D. PETRUZZELL
BRIAN J. MOLLOY
RANDALL J. RICHARDS
JOSEPH J. JANKOWSKI
DAVID S. GORDON
FREDERICK J. DENNEHY
ROY H. TANZMAN[2]
STEVEN J. TRIPP
JAY J. ZIZNEWSKI
ALAN WASSERMAN[<]
JAMES E. TRABILSY
MAUREEN S. BINETTI[<]
ANTHONY J. PANNELLA, JR.
MICHAEL J. BARRETT[<]
MICHAEL F. SCHAFF[2†]
ANGELO JOHN CIFALDI
FRANCIS X. JOURNICK, JR. (1984-2006)
KEVIN M. BERRY[2]
NOEL S. TONNEMAN[2]
JOHN T. KELLY[2]
C. KENNETH SHANK[2]
BARRY A. COOKE[2]
JON G. KUPILIK
PETER R. HERMAN[2]
EDWARD T. KOLE
HESSER G. McBRIDE, JR.
ERIC JOHN MARCY
ROBERT C. KAUTZ[2,6]

VICTORIA A. FLYNN
LYNNE M. KIZIS
KEVIN P. RODDY[2,8,9]
DANIEL S. BERNHEIM 3d[1,5]
DAVID H. STEIN
STEVEN P. MARSHALL
DOUGLAS WATSON LUBIC[2]
CHERYL J. OBERDORF
LISA A. GORAB[2]
RUSSELL J. FISHKIND[2]
LAWRENCE E. JACOBS[2]
FRED HOPKE[2]
CHARLES F. VUOTTO, JR.[1]
DONALD E. TAYLOR[2]
BARRY R. SUGARMAN[2]
BRETT R. HARRIS[1,4]
ALFRED M. ANTHONY[2]
DARREN M. GELBER[2]
MATTHEW M. WEISSMAN[2]
WILLIAM J. LINTON
DONNA M. JENNINGS
GIOVANNI ANZALONE
PETER A. GREENBAUM[2]
WILLARD C. SHIH[2]
BLAIR R. ZWILLMAN[2,10]
STEVEN R. ENIS[2]
LAWRENCE C. WEINER[2]
LAURIE E. MEYERS[2]
JOHN M. CANTALUPO[2]
BARBARA G. QUACKENBOS[2]
DAVID P. PEPE
JOHN E. HOGAN[2]

OF COUNSEL
MATTHIAS D. DILEO
ROBERT A. PETITO
HAROLD G. SMITH
ALAN B. HANDLER[3]
MYRON ROSNER[2]
R. BENJAMIN COHEN

COUNSEL
SUSANNE S. O'DONOHUE[4]
RISA A. KLEINER[3]
RUTH D. MARCUS[1,2]
RICHARD J. BYRNES
JAY V. SURGENT
JAMES P. LUNDY[2,3]
ELIZABETH FARLEY MURPHY

JAMES E. TONREY, JR.
DEIRDRE WOULFE PACHECO
JONATHAN J. BART[2,23]
ROBERTO BENITES
YVONNE MARCUSE
ABBY RESNICK-PARIGIAN[2,3]
BRIAN KALVER[2]
ELLEN TORREGROSSA-O'CONNOR
AMANDA F. SHECHTER[2]
BARBARA J. KOONZ[2]
DAVID S. MESSER[2]
TODD E. LEHDER[2,7]

ASSOCIATES
LINDA LASHBROOK
LORETTA KIRSCH PRIVES[2]
ELIZABETH C. DELL[2]
NANCY A. SLOWE[2]
KELLY A. ERHARDT-WOJIE[2]
JEFFREY J. BROOKNER
DAWN E. MAGUIRE[2,4,5]
FRANCINE E. TAJFEL[2]
RONALD P. COLICCHIO[2,10]
ALBERTINA WEBB[2]
DONNA A. McBARRON
DANIEL R. WASP[2]
JOHN P. MURDOCH II
ANNA MARIA TEJADA[2]
MARY H. SMITH
EDWARD J. ALBOWICZ[2]
ANNA I. MONFORTH
THOMAS P. KELLY[2,3]
STEPHANIE D. GIRONDA
EVERETT M. JOHNSON[2]
ALEX LYUBARSKY[4]
KEVEN H. FRIEDMAN[2]
GREGORY D. SHAFFER[2,<]
JESSICA S. PYATT
LOUIS J. SEMINSKI, JR.
DANIEL R. LAPINSKI[2]
LAUREN R. BERSCHLER[3]
MICHAEL F. FRIED[2]
MICHELE C. LEFKOWITZ
DASHIKA R. WELLINGTON[3]
ROBERT L. SELVERS[2]
ERIK C. ACOSTA[2]

GOLD-ZAFRA[2]
ALYSON M. LEONE[2]
JULIE A. DEMAREE[2]
VINCENT CHENG[2]
MICHAEL J. WEISSLITZ
JONATHAN M. BUSCH[2]
JAMIE M. BENNETT[2]
MARCELLO DE PERALTA[1,2]
KEITH L. HOVEY[2]
JOSEPH J. RUSSELL, JR.[2]
JON S. POLEVOY
HARA L. PODELL[3]
EMILY D. VAIL[2,4]
CHERYL E. CONNORS
RUTH A. RAULS[2]
JAMES J. TRACY
CHAD B. SIMON[2]
ANTHONY WILKINSON[2]
DENIZA G. GERTSBERG[2]
DESHA L. JACKSON
LOUIS A. GREENFIELD[2]
JULIA A. LOPEZ[2]
GINA A. LEE[2]
MELINDA COLON
AMY HERBOLD

[<] Certified Civil Trial Attorney
[C] Certified Criminal Trial Attorney
[‡] Certified Matrimonial Attorney
[†] Certified Workers Compensation Attorney
[*] National Certified Civil Trial Specialist
      Approved by the ABA
[1] Not admitted NJ
[2] Admitted NY
[3] Admitted PA
[4] Admitted CT
[5] Admitted DC
[6] Admitted MA
[7] Admitted MD
[8] Admitted VA
[9] Admitted CA
[10] Admitted FL
[11] Admitted IL
[12] Admitted ME

ATTORNEYS AT LAW

90 Woodbridge Center Drive
Suite 900 Box 10
Woodbridge, NJ 07095-0958
(732) 636-8000
Fax (732) 855-6117

Meridian Center I
Two Industrial Way West
Eatontown, NJ 07724-2265
(732) 542-4500
Fax (732) 493-8387

110 William Street
26th Floor
New York, NY 10038-3901
(212) 267-3091
Fax (212) 267-3828

Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102
(215) 940-4000
Fax (215) 636-3999

Park Building
355 Fifth Avenue
Suite 400
Pittsburgh, PA 15222
(412) 232-0808
Fax (412) 232-0773

website: www.wilentz.com

Please reply to:
Woodbridge
Direct Dial: (732) 855-6027
Direct Fax: (732) 726-4716

March 16, 2010

**VIA E-Filing**
United States District Court
District of New Jersey

   **Re:**  **Damian J. Cioni v. Globe Specialty Metals, Inc., et al.**

Dear Sir or Madam:

  Enclosed for e-filing please find Plaintiff's Complaint with attached Exhibits and Plaintiff's Civil Cover Sheet.

  Thank you for your courtesies in this matter.

       Very truly yours,

       *Dominick Bratti/jw/*

       DOMINICK BRATTI

DB/jw
Enclosure

JS 44   (Rev. 12/07, NJ 5/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
Damian J. Cioni

**(b)** County of Residence of First Listed Plaintiff   **Middlesex County**

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Wilentz, Goldman and Spitzer, P.A.
Dominick Bratti, Esq.
90 Woodbridge Center Drive, Woodbridge, NJ 07095
732-855-6127; dbratti@wilentz.com

### DEFENDANTS
Globe Specialty Metals, Inc., Malcolm Appelbaum, Jeffrey Bradley, Alan Kestenbaum and Mark Cohen

County of Residence of First Listed Defendant   **New York County**

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

### II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL PROPERTY** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 370 Other Fraud | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 371 Truth in Lending | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 380 Other Personal Property Damage | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 385 Property Damage Product Liability | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | **PERSONAL INJURY** | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 362 Personal Injury - Med. Malpractice | | | |
| ☐ 290 All Other Real Property | ☐ 365 Personal Injury - Product Liability | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| **CIVIL RIGHTS** | ☐ 368 Asbestos Personal Injury Product Liability | **PRISONER PETITIONS** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 441 Voting | | ☐ 510 Motions to Vacate Sentence | | |
| ☒ 442 Employment | | **Habeas Corpus:** | | |
| ☐ 443 Housing/ Accommodations | | ☐ 530 General | | |
| ☐ 444 Welfare | | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☐ 445 Amer. w/Disabilities - Employment | | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| ☐ 446 Amer. w/Disabilities - Other | | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | |
| ☐ 440 Other Civil Rights | | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | |

### V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332(a)
Brief description of cause:
Wrongful Discharge/Breach of Contract

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

### VIII. RELATED CASE(S)   (See instructions):
JUDGE                          DOCKET NUMBER

Explanation:

DATE   March 16, 2010

SIGNATURE OF ATTORNEY OF RECORD

WILENTZ, GOLDMAN & SPITZER
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000
DBratti@Wilentz.com
Attorneys for Plaintiff,
Damian J. Cioni

UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

-----------------------------------------------------X
                                 :

DAMIAN J. CIONI,.                     :

       Plaintiff,           :     CIVIL ACTION NO. _____

                                 :

v.                                :

                               :     COMPLAINT

GLOBE SPECIALTY METALS, INC., :
MALCOLM APPELBAUM, JEFFREY :
BRADLEY,  ALAN KESTENBAUM,  :
and MARK COHEN           :

                               :

       Defendants.         :

                               :
-----------------------------------------------------X

**GENERAL ALLEGATIONS**

1.      Plaintiff, Damian J. Cioni (hereinafter "Plaintiff"), is a resident of the State of New Jersey and resides at 38 Jeffrey Road, Colonia, New Jersey 07067.

2.      Defendant Globe Specialty Metals, Inc. (hereinafter "Defendant Globe") is a publicly traded corporation.

3.      Defendant Globe is incorporated in the State of Delaware and has its principal place of business in the State of New York.

#3248470

4.      Defendant Malcolm P. Applebaum is Chief Financial Officer of Defendant Globe.

5.      Defendant Applebaum is a resident of the State of New York.

6.      Defendant Jeffrey Bradley is Defendant Globe's Chief Executive Officer.

7.      Defendant Bradley is a resident of the State of New York.

8.      Defendant Mark Cohen is Defendant Globe's Executive Recruiter.

9.      Defendant Cohen is a resident of the State of New York.

10.     Defendant Alan Kestenbaum is the Chairman of Defendant Globe's Board of Directors.

11.     Defendant Kestenbaum is a resident of the State of New York.

12.     Plaintiff and Defendants Cohen and Applebaum on behalf of Defendant Globe negotiated the terms of Plaintiff's employment.

13.     The terms of Plaintiff's Employment Agreement were negotiated via telephone and e-mail communications.

14.     The terms of Plaintiff's employment were memorialized in an offer letter from Defendant Globe dated April 29, 2009.

15.     A true and exact copy of the April 29, 2009 letter is attached hereto as Exhibit "A".

16.     The April 29, 2009 letter stated, in part, that

> A key component of your [Plaintiff's] compensation package will
> be participation in our [Globe's] long-term equity appreciation.
> You [Plaintiff] will be awarded 30,000 stock options under and
> subject to the terms and conditions of our stock plan upon
> acceptance of the position.  The options will vest over a three year
> period.  One third will vest upon your first employment
> anniversary date, one third upon your second options will be set at
> the price the Company resets its current stock options to, which is
> expected to be approximately $4.00 per share.

-2-

17.     The April 29, 2009 letter provided that Plaintiff would be awarded the 30,000 stock options upon his acceptance of the position.

18.     The April 29, 2009 letter was signed by Defendant Applebaum.

19.     As Globe's Chief Financial Officer, on April 29, 2009, Defendant Applebaum had authority to convey the offer and enter into an employment agreement with Plaintiff.

20.     Plaintiff relied upon said authority.

21.     The April 29, 2009 letter provided that if Plaintiff agreed to the terms therein, he should sign the letter and return it to Defendant Applebaum.

22.     Plaintiff signed the letter on April 30, 2009 and returned it via e-mail to Defendant Applebaum.

23.     Plaintiff executed the April 29, 2009 letter in the State of New Jersey.

24.     Prior to accepting the position with Defendant Globe, Plaintiff worked for Savient Pharmaceuticals, Inc. (hereinafter "Savient") as a Senior Director of Taxation.

25.     In his position at Savient, Plaintiff had already been granted stock options and restricted  stock in Savient as well as an annual salary of $180,000 and a 25% annual bonus.

26.     After learning of Defendant Globe's employment offer to Plaintiff, Savient proposed a counteroffer to Plaintiff.

27.     Savient's counteroffer to Plaintiff included an increase in annual salary and other incentives.

28.     Plaintiff rejected the Savient counteroffer based upon the promises and representations made to him by Defendants as reflected in the April 29, 2009 letter, which included a title of Vice President, annual salary of $215,000 and a bonus from $30,000 to $80,000.

-3-

29.    As a result of voluntarily leaving Savient, and accepting employment at Globe, Plaintiff lost incentive stock options and restricted stock granted by Savient that had not yet vested.

30.    The incentive stock options lost by Plaintiff totaled 8,150 shares at an exercise price of $4.53 per share, which would have vested on December 19 of the next three years at 33% a year.

31.    As a result of leaving Savient, and accepting employment at Defendant Globe, Plaintiff lost 11,925 shares of restricted stock at a cash of $.01, which would have vested at various times over the next four years.

32.    The total incentive stock options and restricted Savient stocks lost by Plaintiff as a result of leaving Savient, and accepting employment with Globe,  had a value of approximately Four Hundred Thousand Dollars ($400,000) based on the fair market value ("FMV") of the restricted stock and stock options at time of his resignation from Savient.

33.    On April 30, 2009, Defendant Globe's Board of Directors met and discussed awards of stock options to executives and other members of Defendant Globe's management team.

34.    Other Globe executives and employees received stock option grants.

35.    On April 30, 2009, the stock option price was set at $4.00 per share.

36.    Plaintiff began working for Globe on June 29, 2009 as agreed.

37.    Plaintiff did not receive the grant of options upon acceptance of the position.

38.    Throughout his employment, Plaintiff asked when he would receive memorization of his stock option grants.  Plaintiff was advised that the documentation would be forthcoming.

-4-

39.     In or about July 2009, Plaintiff advised Defendant Applebaum that he still had not received his stock options documents and requested such documents to be provided as soon as possible.

40.     Defendant Applebaum responded that there was no problem and that Plaintiff would shortly receive the option grants as promised.

41.     At some point, Defendant Applebaum became aware that Defendant Globe did not intend to grant Plaintiff 30,000 stock options as provided for as the continued delay of providing the documents became apparent there was an issue.

42.     Prior to October 2009, Plaintiff repeatedly inquired of Defendant Applebaum when Plaintiff would receive his stock options grants.

43.     Prior to October 2009, Defendant Applebaum knowingly misrepresented to Plaintiff that he would receive the 30,000 stock options as promised.

44.     Plaintiff relied upon statements by Defendant Applebaum to his detriment as he resigned his position at Savient and hence left significant compensation and was misled about compensation that would be given to him at Globe.

45.     In or about October 2009, Defendant Applebaum advised Plaintiff that there was a problem with Plaintiff's stock options.

46.     In or about October 2009, Defendant Applebaum advised Plaintiff that Plaintiff would not be awarded the 30,000 stock options provided for in the Agreement.

47.     Defendant Applebaum said Defendant Kestenbaum would not approve granting the options.

48.     When Plaintiff asked why this was, Defendant Applebaum stated that the only reason given by Defendant Kestenbaum was "because I said so".

-5-

49.     Plaintiff advised Defendant Applebaum that failure to grant stock options was a breach of contract.

50.     Defendant Applebaum, on behalf of Defendant Globe, thereafter offered to buy out the originally promised 30,000 shares at Two Dollars ($2.00) per share.

51.     On October 22, 2009, Plaintiff was granted an additional 15,000 stock options at an exercise price of $8.40 by Defendant Bradley and Defendant Kestenbaum.

52.     A true and exact copy of the grant of additional stock is attached hereto as Exhibit "B".

53.     Plaintiff e-mailed Defendant Cohen on Thursday October 22, 2009 advising him that Plaintiff had been told that Defendant Globe would not grant him the options provide for in the April 29, 2009 letter.

54.     In response, Defendant Cohen stated in an email that he knew what was going on and asked Plaintiff not to retain counsel at that time.

55.     A true and exact copy of Defendant Cohen's email is attached hereto as Exhibit "C".

56.     Via e-mail dated October 22, 2009, Defendant Cohen stated "I have never heard of anything like this in the 33 years of my executive search career and I want to see it resolved. Call me anytime, 914-472-4641."

57.     Defendant Applebaum requested that Defendant Globe reduce Defendant Applebaum's own stock options so as to provide Plaintiff with 30,000 stock options provided for in the April 29, 2009 letter.

58.     Defendant Applebaum's request to reduce his own stock options (hereinafter "Mr. Applebaum's offer") was made directly to Defendant Kestenbaum.

-6-

59.     Defendant Applebaum's offer was rejected by Mr. Kestenbaum.

60.     Prior to obtaining legal counsel, Plaintiff attempted to resolve his dispute with Defendant Globe but without obtaining legal counsel.

61.     Plaintiff's attempt to resolve the matter without the aide of counsel was due to the direction he received from Defendant Applebaum and Defendant Cohen and those attempts were unsuccessful.

62.     On November 9, 2009, Plaintiff met with Defendant Applebaum.

63.     The meeting took place in Defendant Applebaum's office beginning at approximately 11:00 a.m.

64.     Defendant Applebaum told Plaintiff that he [Defendant Applebaum] did not agree with Defendant Globe's position to not grant Plaintiff the stock options as set forth in the April 29, 2009 letter.

65.     Defendant Applebaum advised Plaintiff that the decision of whether to grant Plaintiff stock options rested with Defendant Kestenbaum.

66.     During the meeting, Plaintiff advised Defendant Applebaum that all he wanted to obtain was what had been agreed to as reflected in the April 29, 2009 letter.

67.     Plaintiff further advised Defendant Applebaum that he had sought to do so without legal counsel.

68.     At the November 9, 2009 meeting, Defendant Applebaum advised that Defendant Kestenbaum would not grant the options.

69.     At the November 9, 2009 meeting, Plaintiff again advised Defendant Applebaum that Defendant Globe's failure to grant the stock options was a breach of the parties agreement.

-7-

70.    Plaintiff was aware that other executives received stock options during this time period and that he was being discriminated against.

71.    At the November 9, 2009 meeting, Defendant Applebaum stated that he had the authority to increase Plaintiff's year end bonus so as to compensate him for the loss of the stock options.

72.    Plaintiff stated that an increase in his bonus would be an acceptable resolution.

73.    Plaintiff asked that Defendant Applebaum memorialize the agreement to increase Plaintiff's year end bonus in writing.

74.    Defendant Applebaum stated that he could not confirm the agreement to increase Plaintiff's year end bonus in writing.

75.    Plaintiff believed that he was being asked to waive his legal rights as well as his right to investigate alleged discrimination without the benefit of counsel and without the benefit of written memorization of same.

76.    At the November 9, 2009 meeting, Plaintiff advised Mr. Applebaum that Plaintiff would be retaining an attorney.

77.    At the November 9, 2009 meeting, Plaintiff advised Defendant Applebaum that Plaintiff's attorney would be contacting Defendant Globe.

78.    At the November 9, 2009 meeting, Defendant Applebaum requested that Plaintiff not have his attorney contact Defendant Globe in writing.

79.    Instead, Defendant Applebaum requested that Plaintiff's attorney be directed to informally speak with in-house counsel for Defendant Globe.

80.    Defendant Applebaum attempted to dissuade Plaintiff from consulting with legal counsel.

#3248470.02

81.     At the November 9, 2009 meeting, Defendant Applebaum suggested to Plaintiff that if his attorney spoke with in-house counsel for Defendant Globe, counsel for Globe might then be able to explain to Defendant Kestenbaum the ramifications of his decision to not abide by the agreement and persuade him to change his mind.

82.     At the November 9, 2009 meeting, Defendant Applebaum made clear to Plaintiff that Defendant Globe and/or Defendant Kestenbaum would not like involvement by Plaintiff's attorney.

83.     Per Defendant Applebaum's request that Beth Hinsdale-Piller, counsel for Plaintiff, telephone Stephen Lebowitz, Esq., Defendant Globe's Chief Legal Officer, Ms. Hinsdale-Piller and Mr. Lebowitz spoke via telephone on November 12, 2009.

84.     During the November 12, 2009 telephone call, Mr. Lebowitz requested that their conversation be "off the record."

85.     During the conversation, Ms. Hinsdale-Piller advised Mr. Lebowitz that the Plaintiff was looking to acquire the 30,000 stock options that were promised to him in the Agreement.

86.     During their November 12, 2009 conversation, Ms. Hinsdale-Piller also advised Mr. Lebowitz that the Company had granted Plaintiff an additional 15,000 stock options at an exercise price of $8.40 per share.

87.     Ms. Hinsdale-Piller advised that it was Plaintiff's understanding that the grant was in addition to the initial grant of 30,000 shares made in the offer letter, which was never provided to Plaintiff.

-9-

#3248470.02

88.    Mr. Lebowitz advised that he was unaware of the additional grant of 15,000 stock options and asked that Ms. Hinsdale-Piller provide him with a copy of the letter granting the options.

89.    Ms. Hinsdale-Piller provided the letter via email on November 13, 2009.

90.    A true and exact copy of Ms. Hinsdale-Piller's email is attached hereto as Exhibit "D".

91.    Plaintiff questioned whether the additional grant of 15,000 stock options by Defendants (intentionally or unintentionally) somehow constituted a release of his claims as to previously promised option grants and/or Defendants failure to provide same.

92.    Plaintiff also felt that he was being asked to waive legal rights/compensation without the benefit of counsel due to the request of Defendant Cohen and Defendant Applebaum.

93.    Plaintiff also believed that Defendants failure to grant the options may constitute a wage and hour law violation.

94.    Mr. Lebowitz communicated the fact that Plaintiff retained counsel to Defendant Kestenbaum.

95.    Mr. Lebowitz did not respond to Plaintiff's counsel as he promised he would after speaking with Defendant Kestenbaum.

96.    On November 13, 2009, one day after Plaintiff's counsel contacted counsel for Globe, Defendant Globe terminated Plaintiff's employment with no statement of reason.

97.    The decision to terminate Plaintiff's employment was made by Defendant Kestenbaum.

98.    Plaintiff was advised of the termination by Defendant Bradley.

#3248470.02

99.    At the time of his termination, Plaintiff asked to know the reason for his termination.

100.    Defendant Bradley advised Plaintiff that he could not tell him the reason for termination.

101.    By letter dated November 16, 2009, Defendant Globe confirmed Plaintiff's termination in writing.

102.    In the November 16, 2009 letter, Defendant Globe informed Plaintiff that "because any stock option grants you may have received have not vested, they are forfeited upon the Effective Date and have no further force or effect."

103.    After being terminated, Defendant Globe presented Plaintiff with a General Release.

104.    The April 29, 2009 offer letter provided that should Plaintiff be terminated "for any reason other than gross negligence or willful misconduct in the performance of his duties as Vice President of Tax, he would continue to receive gross base salary continuation benefits for six (6) months after the termination date."

105.    Salary continuation was contingent upon the execution of a reasonably acceptable separation agreement.

106.    The separation agreement presented to Plaintiff following his termination was not reasonable.

107.    Defendants refused to negotiate a change to the proposed severance agreement which was not reasonable.

#3248470.02

108.    Defendants' insistence that plaintiff give up his right to grant of shares (and/or his breach of contract claim with respect to same) in order to receive the severance provided for was not reasonable under the circumstances

## COUNT ONE

### Breach of Contract

109.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 108 of this Complaint and incorporates the same as if set forth in detail herein.

110.    The April 29, 2009 letter provided that Plaintiff would be granted 30,000 stock options upon acceptance of the employment offer letter.

111.    Defendant Globe's conduct through the actions of Defendants Kestenbaum, Applebaum, Bradley and Cohen, including, but not limited to, failure to award Plaintiff 30,000 stock options and failure to provide a reasonable separation agreement and severance pay was contrary to the terms of the April 29, 2009 letter and constitutes a breach of contract.

112.    Defendants' conduct with respect to the proposed separation agreement constitutes a further breach of contract.

113.    Globe's Code of Ethics provides:  "It is the policy of Globe Specialty Metals, Inc. and its subsidiaries (the "Company") that our business should be conducted at all times according to the highest standards of integrity and honesty."

114.    Defendants Applebaum, Kestenbaum and Bradley concealed and failed to disclose  the true reason for the termination of Plaintiff's employment.

115.    Defendant Bradley refused to provide Plaintiff with any reason for Plaintiff's termination.

-12-

116.    Defendants Applebaum, Kestenbaum and Bradley misrepresented the reason for Plaintiff's termination to the New Jersey Department of Labor and Workforce Development Unemployment Insurance Office.

117.    Defendants Applebaum, Kestenbaum and Bradley's arbitrary and capricious conduct constituted a breach of Defendant Globe's code of ethics.

**WHEREFORE**, cause having been shown, plaintiff demands judgment against defendants and seeks the following relief:

    a.     compensatory damages;

    b.     consequential damages;

    c.     incidental damages;

    d.     punitive damages;

    e.     attorneys' fees and costs of suit;

    f.     interest; and

    g.     such other relief as the Court may deem equitable and just.

## COUNT TWO

### Breach Of The Covenant Of Good Faith And Fair Dealing

118.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 117 of the Complaint and incorporates the same as if set forth fully in detail herein.

119.    Plaintiff was given no business reason for Defendant's decision not to grant his stock options.

120.    Defendant Globe did not terminate Plaintiff's employment on the grounds of willful misconduct.

121.    Defendant Globe did not terminate Plaintiff's employment for poor performance.

-13-

122.    Defendant Globe did not terminate Plaintiff's employment on the grounds of negligence.

123.    The conduct of Defendants Kestenbaum, Applebaum, Bradley and Cohen, constitutes a breach of the covenant of good faith and fair dealing implied in every contract.

**WHEREFORE**, cause having been shown, plaintiff demands judgment against defendants and seeks the following relief:

      a.     compensatory damages;

      b.     consequential damages;

      c.     incidental damages;

      d.     punitive damages;

      e.     emotional distress;

      f.     attorneys' fees and costs of suit;

      g.     interest; and

      h.     such other relief as the Court may deem equitable and just.

## COUNT THREE

### Retaliation in Violation of Public Policy

124.    Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 123 of this Complaint and incorporates the same as if set forth in detail herein.

125.    For reasons including, but not limited to, the facts as set forth in paragraphs 1 to 129, Plaintiff sought the assistance of legal counsel.

126.    Plaintiff was terminated without cause or notice, the day after his legal representative contacted Counsel for Globe.

127.    Defendant Globe terminated Plaintiff's employment because he retained counsel.

-14-

#3248470.02

128.     It is the public policy of the United States and the State of New Jersey to allow individuals to have representation in identifying and enforcing their legal rights, including the right to determine if they were being unlawfully discriminated against.

129.     It is the public policy of the United States and the State of New Jersey to ensure that any release of claims, including any release made in conjunction with the termination of employment, be knowing and voluntary.

130.     It is the public policy of the United States and the State of New Jersey to ensure that individuals asked to consider a release of claims in conjunction with the receipt of compensation have an opportunity to consult with an attorney and/or legal advisor of their choice.

131.     It is the public policy of the United States and the State of New Jersey that an individual's ability to consult an attorney not be infringed upon.

132.     The public policy of the United States and the State of New Jersey as set forth in paragraphs 129, 130 and 131 above is evidenced by various state and federal statutes, rules and regulations (and related case law) including, but not limited to, 29 U.S.C. § 626(f)(1).

133.     Defendant's termination of Plaintiff because he had retained counsel including, but not limited to, exploring whether Defendants were unlawfully discriminating against him, constitutes retaliation and/or wrongful discharge in violation of public policy.

134.     Defendants Applebaum, Kestenbaum and Bradley knew, or reasonably should have known, that the termination of Plaintiff's employment was violative of the public policy of the State of New Jersey in that said termination was in retaliation for Plaintiff's decision to retain legal counsel.

-15-

#3248470.02

**WHEREFORE**, the plaintiff demands judgment against defendants for harm suffered as a result of defendants wrongfully discharging him in violation of this clear mandate of public policy, as follows:

a.  back pay and benefits;

b.  front pay and benefits;

c.  compensatory damages;

d.  consequential damages;

e.  punitive Damages;

f.  interest;

g.  attorneys' fees and costs; and

h.  such other relief as this Court deems equitable and just.

## COUNT FOUR

### Wrongful Termination In Violation Of New Jersey Law Against Discrimination ("NJLAD")

135.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 134 of the Complaint and incorporates the same as if set forth fully in detail herein.

136.  The decision to not grant Plaintiff stock options as provided was made by Defendant Kestenbaum.

137.  Plaintiff was given no business reason for Defendants' decision not to grant his stock options.

138.  Plaintiff believed the conduct of Defendants Kestenbaum, Bradley, Applebaum and Globe to be arbitrary and without any rational business or other reason.

139.  Plaintiff began to question the reason for Defendants conduct and whether it was discriminatory, motivated by Plaintiff's age, race, religion and/or marital/familial status.

-16-

#3248470.02

140.   Plaintiff is Catholic.

141.   Plaintiff is 41 years old.

142.   Plaintiff's date of birth is January 5, 1968.

143.   After joining Defendant Globe, Plaintiff advised Defendants that Plaintiff's wife was pregnant with their first child.

144.   On September 15, 2009 Plaintiff's wife gave birth to their first child.

145.   Defendant Applebaum was aware of the birth of Plaintiff's child.

146.   Defendant Globe's termination of Plaintiff constitutes a violation of the New Jersey Law Against Discrimination.


**WHEREFORE,** plaintiff demands judgment against defendants for the following:

a.   full compensation for back pay, benefits and remuneration, with interest;

b.   full compensation for front pay, benefits and other remuneration, with interest;

c.   compensatory and consequential damages;

d.   punitive damages, as defendants' behavior was especially egregious and engaged in by upper level management;

e.   reasonable attorneys' fees and costs, enhanced pursuant to Rendine v. Pantzer, 141 N.J. 292 (1995); and

f.   such other relief as the Court may deem just and proper.

## COUNT FIVE

### Defamation

147.   Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 146 of this Complaint and incorporates the same as if set forth in detail herein.

-17-

#3248470.02

148.    Subsequent to Plaintiff's discharge, Defendant Applebaum met with employees of Globe regarding the discharge.

149.    At these meetings, Defendant Applebaum told employees that Plaintiff had been terminated because he had asked for more compensation than was provided for in his contract.

150.    At the time he made that statement, Defendant Applebaum knew that the statement was false.

151.    The statement that Plaintiff was discharged because Plaintiff asked for more than was provided for in his contract was made by Defendant Applebaum with reckless disregard as to the truth or falsity of the statement.

152.    Following Plaintiff's termination, Defendant advised the New Jersey Division of Unemployment that Plaintiff had been discharged for gross misconduct in conjunction with his employment.

153.    The New Jersey Department of Labor and Workforce Development Unemployment Insurance Office advised Plaintiff of Defendants' allegation of gross misconduct in general terms but would not provide Plaintiff the specifics regarding Defendants' allegations.

154.    In or about December 2009, a representative of the New Jersey Unemployment Division indicated that he believed the representations/statements made by Defendants.

155.    As a result of the above-described publications, Plaintiff has suffered loss of unemployment benefits and injury to his reputation.

**WHEREFORE**, plaintiff demands judgment against defendants, and each of them, for:

      a.     compensatory damages;

      b.     punitive damages;

#3248470.02

c.      interest;

d.      attorneys' fees and costs; and

e.      emotional distress damages; and

f.      Such other and further relief as this court may deem just and proper.

## COUNT SIX

### Fraud

156.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 155 of the Complaint and incorporates the same as if set forth fully in detail herein.

157.    At various times prior to October 2009, when Defendant Applebaum stated to Plaintiff that the award of the 30,000 stock options would be forthcoming, Defendant Applebaum knew those statements to be false.

158.    At various times prior to October 2009, when Defendant Applebaum stated to Plaintiff that the award of 30,000 stock options would be forthcoming, Defendant Applebaum acted with reckless disregard to the truth of the statement.

159.    Thereafter, Plaintiff inquired about the award of the 30,000 stock options promised to him by Globe.

160.    Plaintiff inquired about the award of the promised options of Mr. Applebaum, approximately once or twice every ten (10) to fourteen (14) days from June 29, 2009  to October 22, 2009.

161.    Each time, Plaintiff inquired about the award of the options, Defendant Applebaum stated that the grant of options would be forthcoming.

162.    Plaintiff relied in good faith upon Defendant Applebaum's statements regarding the pending grant of options.

#3248470.02

163.    Plaintiff relied, to his detriment, upon Defendant Applebaum's statements regarding the pending grant of options.

164.    After plaintiff was informed that his stock options would not be granted, Defendant Applebaum offered to increase Plaintiff's year end bonus so as to compensate him for the loss of the stock options.

165.    Defendant Applebaum had authority to offer to increase Plaintiff's bonus in place of the grant of stock options.

166.    Plaintiff accepted said offer and requested that it be in writing.

167.    Upon acceptance, Plaintiff was entitled to have the agreement reduced to writing.

168.    At the time he made the agreement to compensate Plaintiff for the lost options via increased bonus, Defendant Applebaum had no intention to do so.

169.    Defendant Kestenbaum ratified all communications by Defendant Applebaum to Plaintiff.

170.    Defendant Applebaum misled Plaintiff as to the initial grant of options and as to the award of promised options as well as the purported reasons, including, but not limited to, inducing Plaintiff to continue working and to work exceedingly long hours during a difficult business period.

171.    Between June 29, 2009 and November 12, 2009, Plaintiff did not seek other employment.

172.    The conduct of Defendants Globe, Kestenbaum and Applebaum constitutes fraud.

**WHEREFORE**, cause having been shown, plaintiff demands judgment against defendants and seeks the following relief:

    a.  compensatory damages;

-20-

#3248470.02

b.      consequential damages;

c.      incidental damages;

d.      punitive damages;

e.      emotional distress damages;

f.      attorneys' fees and costs of suit;

g.      interest; and

h.      such other relief as the Court may deem equitable and just.

## COUNT SEVEN

### Negligent Misrepresentation

173.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 172 of the Complaint and incorporates the same as if set forth fully in detail herein

174.    The statements/representation by Defendants Globe, Applebaum and Bradley constitute negligent misrepresentation.

**WHEREFORE**, cause having been shown, plaintiff demands judgment against defendants and seeks the following relief:

a.      compensatory damages;

b.      consequential damages;

c.      incidental damages;

d.      punitive damages;

e.      emotional distress damages;

f.      attorneys' fees and costs of suit;

g.      interest; and

h.      such other relief as the Court may deem equitable and just.

-21-

#3248470.02

## COUNT EIGHT

### Promissory Estoppel

175.    Plaintiff repeats and realleges the allegations of paragraphs 1 through  174 of the Complaint and incorporates the same as if set forth fully in detail herein

176.    Plaintiff detrimentally relied upon Defendants promise to grant him 30,000 stock options.

177.    Plaintiff relied upon the promises made by Defendants Kestenbaum, Applebaum, Bradley and Globe.

178.    Plaintiff relied upon Defendant's promise by among other things, leaving his position at Savient and declining Savient's offer made in response to his giving notice of his intent to leave.

179.    Plaintiff's reliance upon promises made by Defendants caused him harm in that he lost stock options and other compensation which would have otherwise been available to him through Savient.

**WHEREFORE**,  plaintiff  demands  judgment  against  defendants  for  the following:

a.    compensatory and consequential damages;

b.    interest; and

c.    such other relief as the Court may deem equitable and just.

## COUNT NINE

### Wrongful Discharge

180.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 179 of the Complaint and incorporates the same as if set forth fully in detail herein.

-22-

181.   The termination of Plaintiff's employment in retaliation for retaining legal counsel constitutes wrongful termination.

182.   As a result of Defendant's conduct in failing to grant Plaintiff stock options as promised, and in subsequently terminating Plaintiff's employment, Plaintiff suffered damage.

183.   In addition to loss of compensation/benefits, Plaintiff was unable to exercise any stock option grants which were granted and/or may have been withheld improperly.

184.   Defendants Kestenbaum, Applebaum and Bradley participated in the wrongful discharge of Plaintiff in violation of public policy.

185.   Defendants Kestenbaum, Applebaum and Bradley are individually liable to Plaintiff for the wrongful discharge of Plaintiff in violation of public policy.

**WHEREFORE**, the plaintiff demands judgment against defendants for harm suffered as a result of defendants wrongfully discharging him as follows:

a.   back pay and benefits;

b.   front pay and benefits;

c.   compensatory damages;

d.   consequential damages;

e.   punitive Damages;

f.   interest;

g.   attorneys' fees and costs; and

h.   such other relief as this Court deems equitable and just.

#3248470.02

## COUNT TEN

### Tortious Interference with Contract

186.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 185 of the Complaint and incorporates the same as if set forth fully in detail herein.

187.    Defendant Kestenbaum was not authorized to direct that Plaintiff's employment be terminated.

188.    Defendant Globe's Board of Directors did not authorize or direct Defendant Kestenbaum to direct that Plaintiff's employment be terminated.

189.    Defendant Kestenbaum was not authorized to interfere with Plaintiff's employment relationship with Defendant Globe.

190.    Defendant Kestenbaum did direct and/or otherwise cause the termination of Plaintiff's employment.

**WHEREFORE**, cause having been shown, plaintiff demands judgment against defendants and seeks the following relief:

a.    compensatory damages;

b.    consequential damages;

c.    incidental damages;

d.    punitive damages;

e.    emotional distress damages;

f.    attorneys' fees and costs of suit;

g.    interest; and

h.    such other relief as the Court may deem equitable and just.

-24-

#3248470.02

## COUNT ELEVEN

### Aiding and Abetting Liability

191.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1

through 190 of this Complaint as if fully set forth herein.

192.    Defendant Cohen, through the actions of Defendants Applebaum, Kestenbaum

and Bradley by his inaction, condoned, ratified, and aided and abetted the retaliation and

discrimination by Defendant Globe, Applebaum, Kestenbaum and Bradley against Plaintiff.

193.    Said Defendant is liable under the LAD for aiding and abetting the violations of

the LAD committed by Defendants Globe, Applebaum, Kestenbaum and Bradley.

**WHEREFORE,** plaintiff demands judgment against defendants for the

following:

a.    compensatory damages;

b.    consequential damages;

c.    interest;

d.    punitive damages;

e.    attorneys' fees and costs, with appropriate enhancement under <u>Rendine v.
Pantzer</u>, 141 <u>N.J.</u> 292 (1995); and

f.    such other relief which the Court may deem just and equitable.

WILENTZ, GOLDMAN & SPITZER, P.A.

By: _____
DOMINICK BRATTI (DB6123)
For the Firm

Dated: March _16_, 2010

-25-

#3248470.02

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

WILENTZ, GOLDMAN & SPITZER, P.A.

By: _____

DOMINICK BRATTI (DB6123)
For the Firm

Dated: March 16, 2010

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of any other proceeding pending in any court or of any pending arbitration proceeding.

WILENTZ, GOLDMAN & SPITZER, P.A.

By: _____
    DOMINICK BRATTI (DB6123)
    For the Firm

Dated: March 16, 2010

#3248470.02