NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAMIAN J. CIONI, | : **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : **OPINION** |
| v. | : Civil Action No.10-CV-01388 (DMC)(JAD) |
| GLOBE SPECIALTY METALS, INC., MALCOLM APPELBAUM, JEFFREY BRADLEY, ALAN KESTENBAUM, and MARK COHEN | : |
| Defendants. | : |

**DENNIS M. CAVANAUGH, U.S.D.J.**:

      This matter comes before the Court upon Malcolm Appelbaum's ("Defendant") motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and Damien Cioni's ("Plaintiff") cross-motion for entry of default judgment pursuant to Fed. R. Civ. P.55. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After considering the submissions of the parties, and based upon the following, it is the decision of this Court that Defendant's motion to dismiss is **denied,** and the Court **reserves decision** on Plaintiff's motion for entry of default judgment pending an evidentiary hearing to address issues of service of process pursuant to Fed. R. Civ. P. 4.

I.    **BACKGROUND** [1]

Plaintiff Damien Coini was employed by Defendant Globe Specialty Metals as their Vice-President of Tax from June 29, 2009 until his termination on November 13, 2009. Before taking the job with Defendant, Plaintiff received a letter, dated April 29, 2009, which memorialized Plaintiff's compensation package, and outlined the severance he would be entitled to if he were terminated "for any reason other than gross negligence or willful misconduct."(See ECF Doc. 2-1, page ID 32, Exhibit "A" of Plaintiff's Complaint). Although Plaintiff's previous employer made a generous counter-offer with a significant stock component, Plaintiff chose to work for Defendant, and accepted their offer on April 30, 2009.

In addition to a base salary of $210,000 per annum and a bonus in the range of 20-40% of that base salary, Defendant's offer of employment described that "a key component of your compensation package at Globe will be participation in our long term equity appreciation. You will be awarded 30,000 stock options under and subject to the terms and conditions of our stock plan upon acceptance of the position." (*Id.* at page ID 32). Plaintiff avers that he never received the options as promised, and that in October, 2009 he was told by Defendant Applebaum that he would not, in fact, receive the options. The parties met on November 9, 2009, but were unable to resolve the situation. On November 12, 2009 Plaintiff retained counsel, and on November 13, 2009, his employment with Defendant was terminated. This action was commenced with the filing of a complaint on March 16, 2009.

**2**

---

[1]These facts have been adopted from the parties' respective court submissions.

## II.    **LEGAL STANDARD**

### A.    Subject Matter Jurisdiction

The question of subject matter jurisdiction that the Court is asked to decide involves the interpretation of terms that are slippery and hard to pin-down. "Citizen," "resident," and "domicile" are often, perhaps regrettably for purposes of legal clarity, defined in relation to one another and even used interchangeably.  On the one hand "a natural person is deemed to be a citizen of the state where she is domiciled," *Gilbert v. David,* 235 U.S. 561, 569, 35 S. Ct. 164, 59 L.Ed. 360 (1915). On the other hand, "tax statutes frequently speak in terms of residence, intending it to be the equivalent of domicile. For example, the New York estate tax speaks in terms of residence and non-residence. Similarly ... , the United States imposes an estate tax on any resident or citizen of the U.S. Although both statutes use the term 'residence,' its usage has been construed to mean 'domicile.' " Robert C. Lawrence III, International Tax and Estate Planning § 1.03(a)(4), at 8–9 (1989). Contrast that with the Court's language in *Mas v. Perry*, 489 F. 2d 1396 (5th Cir., 1970) in which "to be a citizen of a State within the meaning of section 1332, a natural person must be both a citizen of the United States, See *Sun Printing & Publishing Association v. Edwards,* 194 U.S. 377, 383, 24  S.Ct. 696, 698, 48 L.Ed. 1027 (1904);U.S.Const.Amend. XIV, § 1, and a domiciliary of that State. See *Williamson v. Osenton*, 232  U.S. 619, 624, 34 S.Ct. 442, 58

3

L.Ed. 758 (1914); *Stine v. Moore*, 5 Cir., 1954, 213 F.2d 446, 448.[2] For diversity purposes,

citizenship means domicile; mere residence in the State is not sufficient." See *Wolfe v. Hartford*

*Life & Annuity Ins. Co.*, 148 U.S. 389, 13 S.Ct. 602, 37 L.Ed 493 (1893); *Stine v. Moore*, 5 Cir.,

1954, 213 F.2d 446, 448.

     The First Circuit took a different approach to this question, and quite reasonably held in *In*

*re Mailman Steam Carpet Cleaning Corp*. 196 F.3d 1, 5 -6 (C.A.1 (Mass.),1999), that

"affirmative pleading of the precise statutory basis for federal subject matter jurisdiction is not

required as long as a complaint alleges sufficient facts to establish jurisdiction." Moreover, the

Court continued,  "federal subject matter jurisdiction may be established by reading a complaint

holistically, " (*Id*. at 5), especially in light of the fact that "in evaluating a Rule 12(b)(1) motion to

dismiss, the court must first determine whether to treat the motion as a facial or factual challenge

to the court's subject-matter jurisdiction." *Gould Elecs., Inc. v. United States,* 220 F.3d 169, 176

(3d Cir.2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d

Cir.1977). A facial challenge "attack[s] the complaint on its face," while a factual challenge

"attack[s] the existence of subject matter jurisdiction in fact, quite apart from any pleading."

*Mortensen v. First Fed. Sav. & Loan Assn.,* 549 F. 2d 884, 891 (3rd Cir., 1977). "In reviewing a

facial attack, the court must only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs.,*

*Inc.,* 220 F.3d at 176. Nonetheless, "the basis upon which jurisdiction depends must be alleged

4

---

[2]If the Court were to take *Mas* at face value, it would be necessary to insist that parties
include their place of birth, not just their place of residence, domicile or citizenship to establish
subject matter jurisdiction on the basis of diversity in District Court, and plead by attaching their
birth certificates. We decline  to take such a rigid, formalistic and ultimately draconian  approach.

affirmatively and distinctly and cannot be established argumentatively or by mere inference," *S. Freedman & Co. v. Raab,* 180 Fed.Appx. 316, 320-21 (3d Cir.2006) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1206, at 78-79 (1969 & Supp.2005)) (citations omitted).

B. <u>Service of Process and Default</u>

Although the e-mail correspondence between the parties in this case incontrovertibly demonstrates that Defendants were aware of the pending lawsuit, "notice cannot by itself validate an otherwise defective service." *Grand Entertainment Group Ltd. v. Star Media Sales Inc.,* 988 F.2d 476, 492(3rd Cir.1993). On the other hand, Courts are instructed to use their "judicial experience and common sense." See *Ashcroft v. Iqbal*, 29 S. Ct. 1937, 1950 (U.S. 2009). "Rule 4(d)(3) does not require that the delivery of process be accomplished during a face to face meeting with the person upon whom service is to be effected. Nor does it require that it be surrounded by medieval formalism." *O'Connor v. Altus,* 67 N.J. 106, 127-128, 335 A.2d 545, 556 (N.J. 1975). Moreover, if Plaintiff's allegation that Defendants evaded service is accurate, "to allow defendant to prevail would be to countenance evasion of process and contravene the intent of the Rules to hold technicalities to a minimum and decide cases on the merits." (*Id.* at 556). Additionally, the Court notes that "the determination of whether default judgment is appropriate is committed to the discretion of the trial court. "*Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir.1980). "For default judgment, defendant must be considered a 'totally unresponsive' party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Gutierrez v. Berg Contracting Inc.,* No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000) (citing *Jackson,* 636 F.2d at 836).

III.   **DISCUSSION**

A. <u>Subject Matter Jurisdiction</u>[3]

Absent any suggestion to the contrary from Defendants as to their citizenship, or any factual denial, the pleadings allege that all Defendants are "residents" of New York.[4] Defendants can reasonably be construed to be citizens of New York as well. The amount in controversy, while once again not affirmatively pled as a jurisdictional component, appears from the face of the complaint, based on the Court's analysis of the math, to be more than that which is required under 28 U.S.C.A. § 1332(a). Although we are mindful of the language in *S. Freeman & Co. V. Raab*, it does not require an argumentative or overly inferential review to conclude that the pleadings establish on their face, albeit in the most minimal way, sufficient facts on which to find subject matter jurisdiction.

Thus, the Court must conclude that the argument concerning subject matter jurisdiction is too clever by half.[5] The Court says this while acknowledging that there is no question that Plaintiff's pleading in this matter is deficient. This is particularly unforgivable

6

---

[3]The Court notes that in Plaintiff's reply brief to Defendant's motion to dismiss for lack of subject matter jurisdiction, Plaintiff cites only three cases, and not one of them addresses the issues raised in the instant motion. Plaintiff's entire argument amounts to the conclusory statement made on behalf of each Defendant other than Globe itself that each "is a citizen of New York in that he resides in New York." Once again not content to punish the Plaintiff for his lawyers' lack of diligence, the Court has undertaken an extensive review of the law regarding subject matter jurisdiction. It is on these findings that the Court bases its opinions.

[4]This, despite the affidavit that service of process on Defendent Kestenbaum was made at his residence in Pennsylvania.

[5]In no way does the Court trivialize jurisdiction; it is one of the foundations on which our legal system is built.

because, as detailed in e-mails between the parties, submitted to and reviewed by the Court,  the failure was made known to Plaintiff's attorney, and the remedy of amending the complaint was readily available. (See Certification of Christopher Mill, ECF Doc. 23-2, page ID 409). Rather than amending the complaint, however, Plaintiff's attorneys chose to ignore the heads-up from Defendant's attorney, and stuck to their unexamined belief that the pleadings were adequate.(Id. at 409).[6] Now, instead of being able to address the substance and merits of Plaintiff's case, the Court must determine whether or not the case can even be heard by this Court.

The failure to allege the necessary jurisdictional elements in a dedicated paragraph is an omission that is more than merely careless. Nonetheless, in both the civil cover sheet that was filed with the complaint, and between the lines of the complaint itself, the necessary elements to establish diversity of citizenship and the amount in controversy sufficient for this Court to have subject matter jurisdiction are clearly there. Precision in drafting is, of course, the preferred method for clarifying jurisdiction, but this Court will not punish Plaintiff for his lawyer's error with the harsh sanction of dismissal. Defendant's argument that the quite likely inadvertent and careless use of the word "resident" rather than "citizen" should be dispositive for the Court shows that  Defendant misses the point. In citing a case that was decided by this Court, *Francesca v. Atanasio* 2009 WL

---

[6]The following exchange of e-mails details this. On June 21, 2010 at 6:26 p.m., Mr. Mills, attorney for Defendants, wrote to Mr. Bratti, attorney for Plaintiff, as follows: " I told Annmarie that since the usual federal court allegations of jurisdiction and venue don't appear anywhere in the Complaint, the best path for her, given that we were in effect starting from scratch anyway and you have the right to re-plead given that I haven't answered, would be to amend the complaint to add the allegations of jurisdiction and venue that should have been there in the first place." Eighteen minutes later, at 6:44 p.m., Mr. Bratti e-mailed the following reply: "you motioned (sic) the same to me as to jurisdiction, and I told you in no uncertain terms that I did not believe there was any need to replead the complaint, and that I had no intention of doing so."

3297554, (D.N.J.) (D.N.J.,2009), Defendant ignores the import of the Court's analysis. The

Court's determination that it did not have subject matter jurisdiction in *Francesca* was not

premised on a formalistic reading of "resident," but rather on the fact that the pleadings revealed

that the Defendant, a limited liability corporation, was a citizen of Pennsylvania, as was the

Plaintiff.  In fact, the Court explicitly stated "that this assessment is premised on the assumption that

the parties' states of citizenship would be the same as the alleged states of residency." (*Id* at 2 ).

Other Courts have made the same intuitive leap of logic between "resident" and "citizen" without

being inextricably caught in the linguistic, definitional thicket. In our District, the Court wrote that

"although Defendants' Answer generally denies Plaintiff's allegations concerning Defendants'

citizenship, Defendants' brief recognizes that A. Neumann & Associates is a New Jersey-based

corporation, and *neither party suggests that Defendants' citizenship is not diverse from Plaintiff's*

*citizenship, Plaintiff being a resident of Michigan."*(emphasis added.) *Mitan v. A. Neumann &*

*Associates, LLC,* 2010 WL 4782771, 2 (D.N.J.) (D.N.J.,2010). The Court finds this approach to be

consistent with the Supreme Court's consideration of pleading requirements more generally, in

which we are instructed that "determining whether a complaint states a plausible claim for relief

will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." 490 F.3d, at 157-158. See

*Ashcroft v. Iqbal*, 29 S. Ct. 1937, 1950 (U.S. 2009). Drawing on both, this Court declines to dismiss

the complaint as pled. Of course, subject matter jurisdiction may be challenged at any time, since it

goes to the heart of whether a Court is competent to hear the case before it. If Defendant can allege

facts that the parties are not, in actuality, diverse, the Court will entertain that at the appropriate

8

time. In the absence of those facts, however, the Court concludes, as the First Circuit so eloquently put it, that this is "pettifoggery, pure and simple." (*In re Mailman*, p. 5).

    B. <u>Service and Default</u>

Once again the merits of this case are obscured by lawyers behaving badly, and the unfortunate role the Court has been forced into of playing referee. The Court is not in a position to decide on the facts presented whether or not proper service was effectuated on the three named Defendants other than Mr. Applebaum. Defendant points out what appear to be deficiencies in Plaintiff's necessary showing that it allegedly made a good faith and diligent effort to serve all the Defendants, including the omission of signatures from the putative process servers that would allow the Court to view their "affidavits" alleging evasion as such. Whether or not Defendants were evading service such that Plaintiff was entitled to resort to other methods, as may be the case, can not be adduced from the papers before the Court. Thus, in order to resolve the issue, the Court will need to conduct an evidentiary hearing.[7] The Court notes that this waste of judicial resources and client funds could easily have been avoided.[8]  The Court will reserve decision on Plaintiff's motion

---

    [7]The Court notes the irony that Defendants have not moved to dismiss on the grounds of ineffective service, but only on the grounds of subject matter jurisdiction, as previously discussed.

    [8]See Declaration of Stephen Leibowitz, ECF Doc. 23-1, page ID 393, in which the following exchange of e-mails is detailed. On December 9, 2009, Ms. Beth Hinsdale-Piller, Plaintiff's attorney, sent the following to Mr. Stephen Leibowitz, Chief Legal Officer of Defendant Globe Specialty Metals: "Please advise whether you will accept service for the Company and/or individuals mentioned above." On December 11, 2009 at 12:47 p.m. Mr. Leibowitz replied: " I would be happy to accept service on all the parties upon whom you would like to serve that were mentioned in the letter attached to the e-mail below."

for entry of default judgment until the question of service has been fully resolved.[9],[10]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion pursuant to Fed. R. Civ. Pro. 12(b)(1) is

**denied.** The Court **reserves decision** on Plaintiff's cross-motion for entry of default judgment

pending a hearing scheduled for January 25, 2011. An appropriate order follows this opinion.


                                       S/ Dennis M. Cavanaugh

Date:         December  14  , 2010               Dennis M. Cavanaugh, U.S.D.J.

cc:            all Counsel of Record

              The Honorable Joseph A. Dickson, U.S.M.J.

              File

10

---

[9]The Court notes that Defendant's counsel is correct that the Court can not enter default judgment because default has not yet been entered. The Court will take this up at the appropriate time after service of process has been addressed.

[10]The Court once again notes that Defendant Applebaum's motion in lieu of an answer to the complaint was untimely. This was pointed out to Plaintiff's attorney in the previously quoted e-mail of June 21, 2010 from Mr. Mills. Had this been brought to the Court's attention prior to the filing of the motion to dismiss pursuant to Rule 12(b)(1) on June 24, 2010, default might well have been the appropriate action, but once the answer was received the horse, so to speak, had already left the barn.