NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAMIAN J. CIONI, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 10-cv-01388 (DMC)(JAD) |
| GLOBE SPECIALTY METALS, INC., MALCOLM APPELBAUM, JEFFREY BRADLEY, ALAN KESTENBAUM, and MARK COHEN, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the Motion of Defendants Globe Specialty Metals, Inc., Malcolm Appelbaum, Jeffrey Bradley and Alan Kestenbaum (collectively "Defendants") for Partial Summary Judgment as to Counts Three, Four, Five, Six, Eight, Nine, Ten and Eleven of Plaintiff Damian J. Cioni's Complaint. (ECF No.33). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion is **granted**.

I.      BACKGROUND

This matter involves a dispute over the termination of an employee. Plaintiff Damian J. Cioni ("Plaintiff") was employed by Defendant Globe Specialty Metals, Inc. ("Globe") as their Vice-President of Tax from June 29, 2009 until his termination on November 13, 2009. Before

taking the job with Globe, Plaintiff and Globe engaged in discussions and negotiations. As a result of those negotiations, Globe sent Plaintiff an offer letter ("Offer Letter"), dated April 29, 2009, which memorialized Plaintiff's compensation package. The terms of the Offer Letter included a base salary of $210,000, the possibility of a bonus, an offer of 30,000 stock options subject to a vesting schedule and to the terms and conditions of Globe's 2006 Stock Option Plan, and a severance pay provision. Although Plaintiff's previous employer made a competitive counter-offer with a significant stock component, Plaintiff chose to work for Globe, and accepted Globe's offer by signing the Offer Letter on April 30, 2009.

Plaintiff avers that he never received the options as promised, and that in October 2009, he was told by Globe's Chief Financial Officer, Defendant Malcolm Appelbaum ("Appelbaum") that he would not, in fact, receive the options. The parties met on November 9, 2009, but were unable to resolve the situation. On November 12, 2009 Plaintiff retained counsel, and on November 13, 2009, Globe terminated Plaintiff's employment.

Plaintiff commenced this action by filing a Complaint on March 16, 2009. (ECF No. 2). The Complaint asserts a number of claims against numerous Defendants, including Globe, Appelbaum, Globe's Chief Executive Officer Jeffrey Bradley ("Bradley"), Globe's Chairman of the Board of Directors Alan Kestenbaum ("Kestenbaum"). On August 31, 2012, Defendants filed the instant Motion for Partial Summary Judgment as to Counts Three, Four, Five, Six, Eight, Nine, Ten, and Eleven and an accompanying brief ("Def. Br.") (ECF No. 56). Plaintiff filed his Opposition Brief ("Pl. Opp. Br.") on October 1, 2012. (ECF No. 59). Defendants filed a Reply Brief ("Def. Rep.") on October 15, 2012. (ECF No. 60). Defendants' Motion for Partial Summary Judgment is now before this Court.

2

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the (non-moving party), demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the (nonmoving party) if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the (nonmoving party)." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

## III.   DISCUSSION

A. Count Four

In Count Four of the Complaint, Plaintiff asserts that he was terminated in violation of the New Jersey Law Against Discrimination ("NJLAD") on the basis of his age, race, religion

and/or marital/familial status, and that the decision to terminate him was made by Defendant Allen Kestenbaum ("Kestenbaum"). Plaintiff asserts that he suffered two adverse employment actions as a result of this discrimination: (1) Defendants refused to award Plaintiff the 30,000 stock options as promised in the letter Agreement of April 29, 2009; and (2) Plaintiff was terminated from his employment with Globe without any reason being given at the time other than "it's a legal issue." (Pl. Opp. Br. 16).

To begin, as Defendants correctly argue, the "familial status" of an employee is not a protected classification under the NJLAD:

> With respect to employment practices, [N.J.S.A.] § 10:5-12(a) prohibits an employer from basing decisions on a host of suspect characteristics.... Notably absent from the list of protected classifications, however, is familial status. The inclusion of familial status as a prohibited basis for housing-related decisions in other portions of §10:5-12, and the state legislature's failure to add it to §10:5-12(a) despite amending the sub-section four times, cautions against now inferring the claim of which [plaintiff] urges recognition.

Iovanella v. Genentech, Inc., 452 F. App'x 85, 87 (3d Cir. 2011). "Thus, it is clear that the term familial status ... play no role in the statutory definition of an unlawful employment practice" and cannot be the basis for an unlawful discrimination claim under the NJLAD. Bumbaca v. Twp. of Edison, 373 N.J. Super. 239, 248-49 (App. Div. 2004), *certif. denied*, 182, N.J. 630 (2005). Thus, Plaintiff's assertion that Defendants' terminated him in violation of the NJLAD on a basis of his familial status is not a valid claim.

Turning to Plaintiff's remaining claims under the NJLAD, where a plaintiff asserts an NJLAD claim based on classifications actually protected under the statute, he must prove that his termination "took place under circumstances that give rise to an inference of unlawful discrimination." Williams v. Pemberton Twp. Pub. Sch., 323 N.J. Super. 490, 502 (App. Div.

4

1999). Further, in order to establish a *prima facie* claim of discrimination, a plaintiff must prove that the employer had knowledge that the plaintiff belongs to a protected class. Geraci v. Moody-Tottrup, International, Inc., 85 F. 3d 578 (3d Cir. 1996)(affirming summary judgment in favor of the employer holding that "it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant").

First, with regard to Plaintiff's assertions in the Complaint that he was discriminated against based on his marital status and race, the Court is unconvinced that Defendants acted with animus based on these grounds. There is no evidence in the record that either marital status or race played a role in the decision to terminate Plaintiff. Bradley admittedly made the decision to terminate Plaintiff. (Def. Br., Exh. 8, Statement of Material Facts ("D. SOMF") ¶ 45). Bradley further testified that Plaintiff's marital status and race played no role in his decision to terminate Plaintiff. (D. SOMF ¶ 48). Additionally, each of the named Defendants is a married Caucasian male with children, just like the Plaintiff. (D. SOMF ¶¶ 51-52). Plaintiff has presented no response to these facts in his opposition brief, further demonstrating that Plaintiff's claims of discrimination based on his marital status and race are without merit.

Next, Plaintiff's age discrimination fails as a matter of law. Plaintiff has testified that he was forty-one years old when he applied for the position at Globe, forty-one when he was hired by Globe, and forty-one when he was terminated by Globe. (See Cioni Tr. 17:11-24). A finding of age discrimination is impossible based on this admission alone. See, e.g., Young v. Hobart West Group, 385 N.J. Super 448, 461 (App. Div. 2005) ("Because Plaintiff was hired by Defendant at the age of 47 and was fired just a few months later at the same age, an age discrimination claim against Defendant is unsupportable") (citations and internal quotations

5

omitted); Estate of Fajge v. Dick Greenfield Dodge, Inc., No 11-04527, 2012 U.S. Dist. LEXIS 84770, at *22 (D.N.J. 2012) ("When an employee is hired and fired at ages within the bounds of the protected class, a jury cannot reasonably conclude that age was a motivating factor in the employee's termination").

Further, Plaintiff's claim of religious discrimination fails because he cannot establish a *prima facie* case for discrimination on this ground. The record indicates that Defendants lacked the knowledge that Plaintiff belonged to a protected religious class that is required by Geraci. Bradley testified that he did not know Plaintiff's religion, nor did he consider it in making the termination decision. (D. SOMF ¶¶ 47, 48). Kestenbaum and Appelbaum were also not aware of Plaintiff's religion when he was employed by Globe. (D. SOMF ¶ 49). Further, as evidenced by his own deposition testimony, Plaintiff does not know what factors were considered in making the decision to terminate him. (D. SOMF ¶ 53).

However, in spite of this evidence, Plaintiff makes numerous illogical attempts to link his religion with Defendants' decision to terminate his employment, none of which demonstrate that any of the Defendants had actual knowledge of Plaintiff's religion. Plaintiff first states that because he wore a cross necklace to work everyday, and the cross necklace would hang outside of his golf shirt, Defendants knew that he was Catholic. (Pl. Opp. Br. 15). Further, Plaintiff argues that the Defendants specifically noticed Plaintiff's clothing, and that Appelbaum referred to Plaintiff's polo shirts by email to Bradley on September 26, 2009. (Pl. Opp. Br. 15). These facts do not support a conclusion that the Defendant's knew that Plaintiff was Catholic. The Defendants did take notice of the shirt style that Plaintiff wore to work, but no mention was specifically made as to the cross on his necklace. Further, even if any of the Defendants had

noticed the cross necklace, which is not supported by the evidence here, the necklace itself could symbolize that Plaintiff was Catholic or any other denomination of Christian faith. These allegations along are not sufficient to establish that Plaintiff was discriminated based on religion.

Next, Plaintiff references a statement made by Appelbaum to Kestenbaum. With regard to Plaintiff's termination and the award of stock options, Applebaum stated, "I really don't feel good about this. I don't want to be sitting in temple for Rosh Hashanah thinking about this . . ." (Pl. Opp. Br. 16). The Court is unconvinced that the mere reference to a Jewish holiday serves as tangible proof that Defendants knew that Plaintiff was Catholic.

Plaintiff has not demonstrated that Globe or any of its employees knew of his belonging to a specific protected class, nor that any of the Defendants terminated Plaintiff based on his status within a protected class. Thus, as a matter of law, Plaintiff has failed to meet his burden to establish a *prima facie* case of discrimination on the grounds of religion. See, e.g., Woodman v. WWOR-TV, Inc., 411 F.3d 69 (2d Cir. 2005) (affirming summary judgment in favor of the employer holding that "it is counter-intuitive to infer that the employer discriminated on the basis of a condition of which it was wholly ignorant"); Geraci, 82 F. 3d at 578 (affirming summary judgment in favor of employer because plaintiff could not prove that employer had knowledge of her protected class).

Finally, because Plaintiff's underlying discrimination claims fail as a matter of law, Plaintiff's claims based on an aiding and abetting theory against the individual Defendants under the NJLAD also fail and summary judgment is granted as to those claims as well. See, e.g., Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 307 n.15 (3d Cir.) (because plaintiff's underlying claim of discrimination fails, "any claim he brought against the individual defendants

for aiding and abetting fails as well"), *cert. denied*, 543 U.S. 814 (2004); Feraro-Bengle v. Randstad N. Am., L.P., No. 03-1650, 2006 U.S. Dist. LEXIS 61666, at *42 (D.N.J. Aug. 29, 2006) ("Defendants are entitled to summary judgment on Plaintiff's NJLAD discrimination and retaliation claims. It follows, therefore, that Plaintiff's aiding and abetting claim must also fail").

Accordingly, Count Four of the Complaint is dismissed in its entirety.

B. Counts Three and Nine

In Count Three of the Complaint, Plaintiff asserts that he was terminated in retaliation for retaining counsel, in violation of public policy. (Compl. ¶¶ 127, 134). Count Nine similarly alleges that "the termination of Plaintiff's employment in retaliation for retaining legal counsel constitutes wrongful termination." (Compl. ¶ 181). Defendants argue that termination of an at-will employee for retaining counsel is not itself a violation of public policy, and termination on that basis is entirely permissible. (Def. Br. 19).

It is undisputed that Plaintiff was an at-will employee of Globe (D SOMF ¶¶ 24-25), as New Jersey law assumes. See, e.g., Falco v. Cmty. Med. Ctr., 296 N.J. Super. 298, 319 (App. Div. 1997) ("There exists a presumption that employees are at-will" and "[a]n employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise"), *certif. denied*, 153 N.J. 405 (1998); Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 398 (1994) (noting the "at-will presumption"). As an at-will employee, Plaintiff could be terminated by Globe for any reason or no reason at all. See, e.g., Witkowski, 136 N.J. at 397 ("an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine"); Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 191 (1988) ("An employer may fire an employee for no specific reason or simply

because an employee is bothering the boss").

There is a very narrow exception to the at-will employment doctrine, which confers a cause of action when the employee's termination is in violation of a "clear mandate of public policy." E.g., Pierce v Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980); Ballinger v. Delaware River Port Auth., 172 N.J. 586, 604-605 (2002). Proving that a termination was in violation of a "clear mandate of pubic policy" is a "heavy burden" for a plaintiff, who must prove his termination implicated "more than just the private interests of the parties." Pietrylo v. Hillstone Rest. Group, No. 06-5754, 2008 U.S. Dist. LEXIS 108834, at *14 (D.N.J. 2008). The plaintiff must prove that "a threat of public harm, not merely private harm or harm only to the aggrieved employee" is at issue. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 188 (1998). The plaintiff must identify a "specific expression of public policy" that his termination violated, and if he fails to do so, his claim fails as a matter of law. Pierce, 84 N.J. at 72-73.

As Defendants argue, termination of an at-will employee for retaining counsel is not itself a violation of public policy, and termination on that basis is entirely permissible where, counsel was retained in connection with the employee's private dispute with his employer. (Def. Br, 20, citing Erickson, 117 N.J. at 560 ("an employer has an absolute right to discharge an 'at-will' employee even if that employee has retained a lawyer to protest the employer's action – provided only that the employer not violate any clear mandate of public policy"); Alexander v. Kay Finlay Jewlers, Inc., 208 N.J. Super. 503, 507-08 (App. Div.) *certif. denied* 104 N.J. 466 (1986) (employee's termination "in retaliation for the institution of a civil action against the employer as a means of resolving a salary dispute" did "not violate any clear mandate of public policy," but rather "involved a matter having no significance beyond the private interests of plaintiff and

defendant")).

Here, the Court disagrees with Plaintiff's argument that by accepting Globe's offer of 15,000 options in lieu of the original 30,000, Plaintiff would constitute a waiver of Plaintiff's right to any claim for the 30,000 that were promised in the Offer Letter, and thus, would waive his legal rights without the benefit of counsel. (Pl. Opp. Br. 24, 25). On or about November 12, 2009, Plaintiff retained Beth Hinsdale-Piller, Esq., an attorney with the law firm currently representing Plaintiff. (D. SOMF ¶ 39). Plaintiff asserts that he retained Hinsdale-Piller to review a proposed "release of claims" being offered by Globe, and that Defendants violated his public right to consult an attorney in order to make a knowing and voluntary decision as to the release of claims.(Pl. Opp. Br. 26). However, the record evidence is to the contrary. The only "release of claims" that Plainitff cites to is the October 22, 2009 letter offering 15,000 options. (Pl. Opp. Br. 23). That letter does not contain any "release of claim" or any other similar language. Further, the facts are uncontroverted that Plaintiff retained counsel solely for the purpose of addressing issues related to the stock options referenced in the initial Offer Letter. Hinsdale-Piller contacted Stephen Lebowitz, Esq., Globe's Chief Legal Officer, on November 12, 2009 to discuss the issue of Plaintiff's stock options. (D. SOMF ¶ 40). Plaintiff was terminated on November 13, 2009. (D SOMF ¶ 45). Globe presented Plaintiff with a proposed release of claims on November 13, 2009, three days after his termination. (D. SOMF ¶ 57). Since the only "release of claims" that Plaintiff ever received from Globe came on November 16, 2009, four days *after* Plaintiff retained counsel, and after that counsel contacted Globe, it is therefore impossible for Globe to have terminated Plaintiff in retaliation for retaining counsel to review a "release of claims." (emphasis added). Thus, contrary to Plaintiff's argument, Defendants did not violate any public policy, and

Defendants' Motion for Summary Judgment is granted as to Counts Three and Nine.

### C. Count Five

Count Five of the Complaint asserts a claim for defamation. In support of this Count, Plaintiff alleges that: (1) Defendant Appelbaum defamed him by telling other employees that he had been terminated for asking "for more compensation than was provided for in his contract" (Compl ¶ 149); and (2) an unidentified individual at the New Jersey Division of Unemployment Insurance ("NJDUI") told him that an unidentified "Defendant" reported to the NJDUI that Plaintiff had been discharged for certain unspecified "gross misconduct" (Compl. ¶¶ 152-54).

The requisite elements of a defamation claim are: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." Leang v. Jersey City Bd. Of Educ., 198 N.J. 557, 585 (2009) (quoting DeAngelis v. Hill, 180 N.J. 1, 13 (2004). It is also well-established that alleged defamatory statements cannot give rise to liability if the statements were either true or privileged. E.g, McLaughlin v. Atl. City, 143 F. App'x 402, 405 (3d Cir. 2005); Murphy v. Johns-Manville Products Corp., 45 N.J. Super. 478 (App. Div.), *certif. denied*, 25 N.J. 55 (1957).

First, Plaintiff cannot establish a *prima facie* claim for defamation as to Appelbaum's alleged statement because the statement was true. The Offer Letter provided for 30,000 stock options that were to vest over a three year period. (D. SOMF ¶ 19). When Globe's Executive Chairman determined that the company could not grant Plaintiff 30,000 stock options, Globe offered Plaintiff 15,000 options instead. (D. SOMF ¶¶ 33-34). It is clear that Plaintiff understood that the second offer of 15,000 shares was in lieu of the initial 30,000 that were offered to him.

11

Plaintiff's deposition testimony on the subject is as follows:

> Q. Did Mr. Appelbaum ever suggest to you that Globe was willing to give you 15,000 options in addition to the 30,000 options that they were not going to give you?
> A. No.
> Q. Did they ever tell you they were going to give you 45,000 options?
> A. No.
> Q. Did they ever suggest that?
> A. No.
> Q. Did you ever interpret them to be saying that?
> A. No.

Cioni Tr. 189:1-9.

Despite Plaintiff's understanding that he was not entitled to 45,000 shares of stock, he nonetheless, through his lawyer, demanded a total of 45,000 stock options. (See Compl. ¶¶ 16, 51, 52, 85-87, 91; D. SOMF ¶¶ 41-42). Accordingly, the Court finds that Appelbaum's alleged statement that Plaintiff was asking for more compensation than provided for in his contract was truthful, and so cannot be the subject of a defamation claim.

Next, Plaintiff argues that Defendants provided a false and defamatory statement to the NJDUI when the Defendants advised the NJDUI that Plaintiff had been discharged for gross misconduct in conjunction with his employment. (Pl. Opp. Br. 31). As proffered proof of this alleged false and defamatory statement, Plaintiff provides the Court with a notification letter that he received from the NJDUI, advising him of a factfinding conference. (ECF No. 58, Greenan Cert., Exh. Z). The notice states that the reason for the factfinding conference is because Plaintiff "*may* have been separated for misconduct in connection with his work." (Id.) (emphasis added). Plaintiff provides no further proof that any individual Defendant made such a statement to the NJDUI. Rather, Plaintiff only speculates that the NJDUI could only have obtained this information from Plaintiff's employer, Defendant Globe. (Pl. Opp. Br. 31, 32). The notice from

the NJDUI, absent any other supporting information, is not based on "personal knowledge" of the claimed defamatory statement, as required by FED. R. CIV. P. 56(c)(4) and L.CIV. R. 7.2(a), and is hearsay which cannot be used to oppose summary judgment. See, e.g., FED. R. EVID. 801; Gonzalez v. Sec'y of DHS, 678 F.3d 254, 262 (3d Cir. 2012). Thus, because Plaintiff has failed to present any sufficient evidence that Defendants defamed him, Plaintiff's defamation claim fails as to this alleged statement as well.

D. Count Six

Count Six of the Complaint asserts a claim for fraud. Plaintiff contends that Appelbaum misrepresented to him that he would be awarded 30,000 stock options at a strike price of $4.00 per share without the existing intention to award the grant of options. (P. Opp. Br. 32). Plaintiff maintains that there is a factual dispute "as to whether Defendants ever intended to provide Plaintiff with the promised options" and because during his employment Appelbaum continued to represent to Plaintiff that he would receive the 30,000 options referenced in the Offer Letter. (Pl. Opp. Br. 33).

In New Jersey, fraud consists of the following elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). A plaintiff must prove fraud by "clear and convincing" evidence. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 174 (2006); Weil v. Express Container Corp., 360 N.J. Super. 599, 613 (App. Div.), *certif. denied*, 177 N.J. 574 (2003). "Clear and convincing evidence[] is a higher standard of proof than proof by a preponderance of the evidence.... The clear and convincing

standard should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Land, 186 N.J. at 169 (internal quotations and citation omitted).

Here, Plaintiff has not satisfied prong two of the test laid out in Gennari, as he has not established that Appelbaum had any knowledge or belief that his representations regarding the stock options were false. Instead, the facts show that Appelbaum believed that he had the authority as Chief Financial Officer to make the offer of the stock option to Plaintiff at the time that he made said offer. (D. SOMF ¶ 8). Appelbaum also believed that the options offered would be forthcoming. (D. SOMF ¶ 19). Further, Appelbaum never said or did anything that led Plaintiff to believe that Appelbaum was trying to trick him with regard to the options. (D. SOMF ¶ 9). Despite the fact that Plaintiff relied on Appelbaum's representations when deciding to leave Savient and join Globe, Plaintiff simply cannot demonstrate that Appelbaum made the offer of stock options with knowledge that he lacked the authority to do so. Thus, Defendants' Motion for Summary Judgment is granted as to Plaintiff's fraud claim.

E. Count Eight

Count Eight of the Complaint asserts a claim for promissory estoppel, alleging that Plaintiff "detrimentally relied upon Defendants['] promise to grant him 30,000 stock options" by "leaving his position at Savient [his former employer] and declining Savient's offer made in response to his giving of notice of intent to leave." (Compl. ¶¶ 176-78).

Promissory estoppel is a claim that "sound[s] in quasi-contract." Jones v. Marin, No 07-738, 2009 U.S. Dist. LEXIS 74139, at *17 (D.N.J. 2009). Here, there is an express, countersigned contract addressing Plaintiff's alleged right to stock options: the Offer Letter from

Globe. (See Compl., Ex. A). Only a "party who confers a benefit upon another party outside the framework of an express contractual relationship may seek recovery ... on the basis of a quasi-contractual obligation"; but where, as here, there is an "express contract, there is no basis or need for plaintiff to pursue a quasi-contractual claim." Winslow v. Corporate Express, Inc., 364 N.J. Super. 128, 143 (App. Div. 2003). See also, Hunter v. Sterling Bank, No 08-879, 2010 U.S. Dist. LEXIS 111548, at *42 (E.D. Pa. 2010) ("In New Jersey, a promissory estoppel claim will not survive where the alleged promise was made in the context of a contractual relationship"). Plaintiff's citations to Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 564 (1980), in support of his argument that he is entitled to proceed on both theories of promissory estoppel and breach of contract, are misplaced. The Cartel Court allowed the plaintiff to advance multiple theories of recovery in a tort case, namely strict liability and negligence. The Cartel case did not, however, involve whether or not the underlying dispute was specifically governed by an express contract. Since the subject Offer Letter from Globe in the instant matter expressly governs any right to the stock options Plaintiff claims should have been granted, it precludes Plaintiff's claim for promissory estoppel. Thus, Defendants' Motion for Summary Judgment is granted as to Plaintiff's promissory estoppel claim.

F. Count Ten

Count Ten asserts a claim for tortious interference with contract. Specifically, Plaintiff alleges that Kestenbaum "did direct and/or otherwise cause the termination of Plaintiff's employment," without authorization to do so. (Compl. ¶¶ 187-90; Pl. Opp. Br. 39). Plaintiff also argues that there is a factual dispute as to whether Kestenbaum was acting within the scope of his employment by allegedly failing to give the Board the opportunity to consider the grant of

15

options to Plaintiff. (Pl. Opp. Br. 39).

As a general rule, a tortious interference claim can only be directed against defendants who are not parties to the relationship," Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 752-53 (1989); accord e.g., Med. Soc'y of N.J. v. Amerihealth HMO, Inc., 376 N.J. Super. 48, 60 (App. Div. 2005). "[B]ecause a corporation can only act through its officers and directors, a corporate officer or director can only interfere with a contract to which the corporation is a party where the officer or director acts outside the scope of his authority as officer or director." Rodin Props.-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc., 49 F. Supp. 2d 728, 738 (D.N.J. 1999). See also, e.g., Di Maria, 351 N.J. Super. at 568 ("if an employee or agent is acting on behalf of his ... employer or principal, then no action for the tortious interference will lie" against him).

As an initial matter, Plaintiff cannot support his assertions that Kestenbaum was the decision-maker with respect to his termination. Conversely, the record clearly indicates that Bradley, not Kestenbaum, made the decision to terminate Plaintiff's employment with Globe. As Defendants' cite in their Reply Brief: Bradley testified that he made the decision; Kestenbaum testified that he (Kestenbaum) did not make the decision; and Plaintiff admits that he does not know who made the decision. (Def. Rep. 14) (citing Def. Br. 8-9; D. SOMF ¶¶ 45, 53, 54; Kestenbaum Tr. 89:4-6). As there is no evidence in the record supporting Plaintiff's contention that Kestenbaum caused Plaintiff's termination, his claim for tortious interference by Kestenbaum cannot stand, and Defendants are entitled to summary judgment.

Next, there is no evidence to support Plaintiff's assertions that Kestenbaum acted outside the scope of his employment as the Chairman of the Board of Directors or that he "vetoed" the

issuance of the stock options offered to Plaintiff. Plaintiff cites to Kestenbaum's deposition testimony to show that he (Kestenbaum) did not have the authority to decide whether the stock options were granted and also that he did not have "veto power" as to whether the Board approved the grant of stock options. (Pl. Opp. Br. 40). Plaintiff offers no other evidence regarding the scope of Kestenbaum's authority, nor does Plaintiff provide proof that Kestenbaum actually engaged in any actions that exceeded his authority. Plaintiff cites to Kestenbaum's statement of the words "because I said so" numerous times in his Opposition Brief as proof of some sort of tangible wrongdoing by Kestenbaum. (Pl. Opp. Br. 40). However, this statement, alone, does not support the conclusion that Kestenbaum took any direct action to prevent the Board of Directors from considering the grant of options to the Plaintiff, nor does it support the conclusion that Kestenbaum prevented others in the company from presenting the grant of stock options to Globe's Board for approval. Thus, Plaintiff's tortious interference claim against Kestenbaum cannot stand on this ground either.

Accordingly, the Court grants the instant Motion for Summary Judgment as to Count Ten of the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **granted**. An appropriate Order accompanies this Opinion.

4/30/13

Dennis M. Cavanaugh, U.S.D.J.

Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Joseph Dickson, U.S.M.J.
            File

17