<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **DAMIAN J. CIONI,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 10-1388 (ES) (MAH)** |
| **v.** | : | |
| | : | **OPINION** |
| **GLOBE SPECIALTY METALS, INC.,** | : | |
| **MALCOLM APPELBAUM, JEFFREY** | : | |
| **BRADLEY, and ALAN** | : | |
| **KESTENBAUM,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court upon motion by Defendants Globe Specialty Metals, Inc., Malcolm Appelbaum, Jeffrey Bradley, and Alan Kestenbaum (collectively "Defendants") for partial summary judgment, (D.E. No. 70), as to Counts One, Two, and Seven of the Complaint filed by Plaintiff Damian J. Cioni ("Cioni" or "Plaintiff"), (D.E. No. 2).  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  Based on the following and for the reasons expressed herein, Defendants' motion is GRANTED.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter involves a dispute over the termination of an employee.  Plaintiff was employed by Defendant Globe Specialty Metals, Inc. ("Globe") as their Vice President of Tax from June 29, 2009 until his termination on November 13, 2009.  (D.E. No. 72, Defendants

Statement of Undisputed Material Facts ("SUMF") ¶¶ 26, 42).[1]  Before accepting the job with Globe, Plaintiff and Globe engaged in negotiations.  (SUMF ¶¶ 7-12).  As a result, Globe sent Plaintiff an offer letter dated April 29, 2009 ("Offer Letter"), which memorialized Plaintiff's compensation package.  (SUMF ¶ 13; D.E. No. 70-1, Ex. C to Caldwell Cert. ("Caldwell Cert. Ex. C")).  The terms of the Offer Letter included a base salary of $210,000; a bonus provision; 30,000 stock options subject to a vesting schedule and the terms of Globe's 2006 Stock Option Plan; and a severance pay provision.  (SUMF ¶¶ 15-16, 24; Caldwell Cert. Ex. C).  Although Plaintiff's previous employer made a competitive counteroffer, Plaintiff chose to work for Globe and accepted Globe's offer by signing the Offer Letter on April 30, 2009.  (SUMF ¶ 14; D.E. No. 76, Plaintiff's Counterstatement of Material Facts ("CMF") ¶ 57; Caldwell Cert. Ex. C).

Plaintiff avers that the stock options were never granted to him as promised, and that in October 2009, he was told by Globe's Chief Financial Officer, Defendant Malcolm Appelbaum ("Appelbaum") that he would not, in fact, receive the options.  (CMF ¶ 69; SUMF ¶¶ 28-29).  The parties met in October and November 2009, but were unable to resolve the situation.  (SUMF ¶ 30).  Plaintiff's counsel contacted Globe on November 12, 2009 and on November 13, 2009, Globe terminated Plaintiff's employment.  (SUMF ¶¶ 37, 42; CMF ¶¶ 95-96).

Plaintiff commenced this action on March 16, 2010.  (D.E. No. 2, Complaint ("Compl.")).  The Complaint asserts multiple claims against numerous Defendants, including Globe, Appelbaum, Globe's Chief Executive Officer Jeffrey Bradley ("Bradley"), and Globe's Chairman of the Board of Directors Alan Kestenbaum ("Kestenbaum").  (*Id.*).  On April 30, 2013, by Opinion and Order, the Court granted Defendants' previous motion for partial summary

---

[1] The facts recited here are undisputed.  Plaintiff does dispute some of the facts presented in Defendants' SUMF in the paragraphs cited by the Court.  (*Compare* SUMF, *with* D.E. No. 75-1, Pl.'s Response to Defendants' Statement of Facts Not In Dispute ("Pl. Resp. to SUMF")).  However, facts gleaned by the Court from the SUMF for use in this section are general background facts and do not appear to be in dispute.

judgment and dismissed Counts Three, Four, Five, Six, Eight, Nine, Ten and Eleven of Plaintiff's Complaint ("Prior Opinion").  (D.E. Nos. 61, 62).  On August 22, 2013, Defendants filed the instant motion for partial summary judgment as to Counts One, Two and Seven of Plaintiff's Complaint.  (D.E. No. 70).  Defendants assert that in light of the findings and conclusions of the Prior Opinion, the three remaining causes of action are ripe for disposition on summary judgment.  (D.E. No. 70-2, Defendants' Brief in Support of Motion for Summary as to Count One, Two and Seven of Plaintiff's Complaint ("Defs.' SJ Mot. Br.") at 1).

## II.    LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  *Id.* at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubts as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings.  *See Celotex Corp.*, 477 U.S. at 324.  Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment.  *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).  The court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-

3

moving party.  *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  If the non-moving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

## III.    DISCUSSION

### a.   Count One: Breach of Contract

In Count One, Plaintiff asserts that Defendants breached the terms of the Offer Letter by failing to grant Plaintiff 30,000 stock options upon acceptance of the contract and failing to provide Plaintiff with a reasonable separation agreement upon termination.  (Compl. ¶¶ 109-112).  In this Count, Plaintiff also claims that Defendants breached Globe's Code of Ethics by failing to provide Plaintiff with the true reason or any reason for his termination and misrepresenting the reason for termination to the New Jersey Department of Labor and Workforce Development Unemployment Insurance Office ("NJDUI").  (Compl. ¶¶ 113-117).

### i.   Breach of Contract Claim based on Failure to Grant Stock Options

To prevail on a breach of contract claim, a plaintiff must prove that a valid contract existed, that the defendant breached the contract and that the plaintiff suffered damages as a result of the breach.  *See AT&T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp. 2d 367, 371 (D.N.J. 1999); *Scully v. Borough of Hawthorne*, 58 F. Supp. 2d. 435, 460 (D.N.J. 1999).  Damages from a breach of contract "may not be merely speculative, possible or imaginary." *Wasserman's Inc. v. Twp. of Middletown*, 137 N.J. 238, 256 (1994) (quoting *Kenford Co. v. Cnty. of Erie*, 67 N.Y.2d 257, 502 (Ct. App. 1986)).  The parties appear to agree that Defendants breached the terms of the Offer Letter by failing to grant stock options to Plaintiff upon his acceptance of the position.  (*See* SUMF ¶¶ 27-36; CMF ¶ 17).  However, Defendants argue that

Plaintiff cannot meet its burden of proof with respect to damages resulting from the breach. (Defs.' SJ Mot. Br. at 4-7).

It is undisputed that when Plaintiff's position at Globe was terminated, his stock options had yet to be granted.  (*See* SUMF ¶¶ 42-43; CMF ¶ 43).  However, pursuant to the vesting schedule in the Offer Letter, even if they had been granted, none of the stock options would have vested by the date Plaintiff's employment was terminated.  (SUMF ¶ 43).  Defendants argue that unvested stock options have no value and thus Plaintiff cannot prove he was damaged by Globe's failure to grant them.  (Defs.' SJ Mot. Br. at 4-7).  Quoting from the Pennsylvania Supreme Court, Defendants provide:

> it is impossible to ascribe a meaningful value to the unvested stock options, primarily because it is absolutely impossible to predict with reliability what any stock will be worth on any future date.  Ascription of a value to a stock option before it vests is impermissibly speculative.

*Fisher v. Fisher*, 564 Pa. 586, 592 (2001); (Defs.' SJ Mot. Br. at 5).  Defendants also cite to *Butvin v. DoubleClick, Inc.*, No. 99-4727, 2001 WL 228121 (S.D.N.Y. 2001) *aff'd* 22 F. App'x 57 (2d Cir. 2001); (Defs.' SJ Mot. Br. at 5).  In *Butvin*, the plaintiff, like Cioni, was fired before the entirety of his stock options had vested.  *Butvin*, 2001 WL 228121, at *2.  According to the court, "Butvin did not hold an indefeasible interest in any stock option until it vested in accordance with the timetable established by DoubleClick."  *Butvin*, 2001 WL 228121, at *1.  The court further ruled:

> Butvin nevertheless tries to establish that DoubleClick sought to "deprive [him] of [his] DoubleClick stock options by merely terminating [his] employment,"…but in fact he had no ownership interest in stock options before they vested; when DoubleClick fired Butvin before all his stock options vested he might feel ill-used but he cannot argue that he had been deprived of anything to which he was entitled.

*Butvin*, 2001 WL 228121, at *9 (citation omitted).

It is clear from the Offer Letter that the stock options Plaintiff was to receive would not begin to vest until his "first employment anniversary date." (Caldwell Cert. Ex. C). In his deposition testimony, it is also clear that Plaintiff understood that the stock options had no value until they vested and that Plaintiff was never promised that he would be employed by Globe long enough for the options to vest. (D.E. No. 70-1, Ex. I to Caldwell Cert. ("Cioni Depo. Tr.")). Plaintiff's deposition testimony on the subject is as follows:

> Q: Was there anything in the [Offer Letter] that guaranteed you that you would still be employed when your stock options began to vest a year later?
> A: No.

(Cioni Depo. Tr. at 150:15-20).

> Q: Were you promised that you would be working at Globe long enough for the options to vest?
> A: Again, No.

(Cioni Depo. Tr. at 186:22-25).

> Q: And what would happen if you were laid off in terms of the vesting of your options?
> A: The options don't vest.
> Q: And if they don't vest, of what value were they to you during that first year?
> A: Usually there's a prorated amount that you would vest in. I didn't know if that was fact, **so the value to me without vesting is zero, is zero.**
> Q: According to the offer, correct?
> A: Correct.

(Cioni Depo. Tr. at 161:24-162:12) (emphasis added). Since there is no record evidence that Plaintiff was promised employment until the options vested and the options, if granted, would not have vested at the time his employment was terminated, Plaintiff cannot prove he was damaged by Defendants' failure to grant the options.

In opposition to Defendants' motion, Plaintiff asserts that the language of Globe's Stock Option Plan (the "Plan"), which was explicitly referred to in the Offer Letter, demonstrates that Plaintiff's unexercised options were not rendered without value upon his termination. (D.E. No.

75, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment on Counts One, Two and Seven of the Complaint ("Pl.'s Opp'n Br.") at 14-15). Specifically, the Plan stated that a Participant:

> may exercise any Option granted to him or her **to the extent that the Option is exercisable** on the date of such termination of service, but only within such terms as the Administrator has designated in a Participant's Option Agreement.

(*Id.* at 15; D.E. No. 75-10, Ex.V to Petruzzelli Decl. ¶ 13(a)) (emphasis added). Based on this language, Plaintiff argues that "there is no forfeiture of unexercised options upon termination from employment." (Pl.'s Opp'n Br. at 15). However, Plaintiff ignores the language of the Plan that requires the option to be "exercisable" on the termination date. Since an option would only be "exercisable" if it were vested, this term of the Plan gives no credence to Plaintiff's argument that his unvested options had value upon his termination.

Next, Plaintiff relies on *Bernard v. IMI Systems, Inc.*, 131 N.J. 91 (1993) to support the proposition that a stock option grant does not automatically lapse upon an employee's termination. (Pl.'s Opp'n Br. at 16). However, the facts in *Bernard* are distinguishable from the present case. In *Bernard*, the plaintiff was told he had an option of 10,000 shares and that he would receive a written option agreement with different terms from those of other employees. 131 N.J. at 94. Ultimately, the day after the plaintiff was terminated, he received a standard option agreement which set forth a specific time schedule upon which options could be exercised and provided that an option could not be exercised after an employee's termination. *Id.* First, the Supreme Court of New Jersey recognized that

> it is not uncommon for an employee's right to exercise a stock option to terminate upon such employee's termination from employment . . . . Moreover, stock options are incentive to stimulate the efforts of key employees and to strengthen the desire of such employees to remain in the employment of the Corporation. Such incentives do not apply to terminated employees.

*Id.* at 107 (citations omitted).  However, the court found genuine issues of fact as to whether the defendant breached its agreement to provide the plaintiff with an exercisable stock option.  *Id.* at 108.  This case is not applicable here because, unlike the plaintiff in *Bernard*, Plaintiff was aware of the terms of his stock options.  (Caldwell Cert. Ex. C; Cioni Depo. Tr.).  As the clear language of the Offer Letter and Plaintiff's own deposition testimony demonstrate, any stock options that Plaintiff may have been entitled to would not have been exercisable until Plaintiff's first employment anniversary.  (Caldwell Cert. Ex. C).  Whereas the plaintiff in *Bernard* could not exercise his stock options because he was never provided allegedly promised information about when they would vest and become exercisable*, see* 131 N.J. at 94, Cioni could not exercise his stock options because he did not meet the timeline requirements that he had agreed to and was unquestionably aware of at the time of his termination.

Plaintiff also relies on a number of other cases in which terminated employees were entitled to damages for the value of unvested options.  (Pl.'s Opp'n Br. at 18-19).  However, in those cases, the employees were all found to be wrongfully or unlawfully terminated.  *See Scully v. US WATS, Inc.*, 238 F.3d 497 (3d Cir. 2001) (Court determined that Scully, not an at-will employee, was unlawfully terminated in violation of his employment contract and improperly denied the right to exercise his stock option.); *Greene v. Safeway Stores, Inc.,* 210 F.3d 1237, 1243-44 (10th Cir. 2000) (providing damages for unrealized stock options to an executive wrongfully discharged in violation of the Age Discrimination Employment Act); *Knox v. Microsoft Corp.*, 962 P.2d 839, 841-43 (Wash. Ct. App. 1998) (approving an award of damages for unvested options to employee wrongfully terminated in violation of his employment contract).

Here, the breach complained of in Plaintiff's Complaint is not based on wrongful termination but on Defendants' failure to grant Plaintiff stock options or provide him with a reasonable separation agreement.   (Compl. ¶¶ 109-112).   Thus, the aforementioned cases Plaintiff relies on are inapplicable.   In addition, the Court has already determined that Plaintiff was not fired in violation of the New Jersey Law Against Discrimination or wrongfully terminated in retaliation for retaining counsel.  *Cioni v. Globe Specialty Metals, Inc.,* No. 10-1388, 2013 WL 1844752 (D.N.J. Apr. 30, 2013).   The only other allegations supporting Plaintiff's breach of contract claim are premised on Defendants' failure to provide the true reason or any reason for Plaintiff's termination.   (Compl. ¶¶ 114, 115).   These allegations have also already been addressed by the Court in its determination that Plaintiff "was an at-will employee was an at-will employee of Globe . . . [who] could be terminated by Globe for any reason or no reason at all."  *Cioni,* 2013 WL 1844752, at *4; *see also Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) (affirming that pursuant to the law of the case doctrine, once an issue is decided, it will not be re-litigated in the same case).

In an attempt to save Count One from summary judgment, Plaintiff points to two other categories of cases, both of which are completely inapplicable here.  (Pl.'s Opp'n Br. at 13, 20-21).   First, Plaintiff refers to cases in which damages were awarded for breach of a contract to "deliver stock."  (*Id.* at 13).  Whereas stock *grants* may have an immediate value to the recipient, stock *options*, like those claimed here, have no value until they vest.  *Fisher*, 564 Pa., at 592. There cases are thus irrelevant.   Plaintiff also relies upon a number of matrimonial cases involving equitable distribution.  (Pl.'s Opp'n Br. at 20-21).   However, in these cases, the spouse/employee was still employed at the time marital assets were distributed such that, unlike here, the options at issue could still potentially vest in the future.  *See, e.g., Heller-Loren v.*

*Apuzzio*, 371 N.J. Super. 518, 529 (App. Div. 2004); *In re Marriage of Miller*, 915 P.2d 1314 (Colo. Sup. Ct. 1996); *Pascale v. Pascale*, 140 N.J. 583 (1995).

Ultimately, Plaintiff's breach of contract claim based on Defendants' failure to grant his stock options fails because, as a matter of law, it is impossible to prove he was damaged by the breach.   Plaintiff's attempts to provide other grounds for the Court to ascribe value to his unvested options are unpersuasive because they are based on inapplicable case law.   In addition, many of Plaintiff's arguments appear to be based on allegations not contained in Count One of the Complaint.   For these reasons, Defendants are entitled to summary judgment on this portion of Plaintiff's breach of contract claim.

### ii.  Breach of Contract Claim based on Separation Agreement

In Count One, Plaintiff also asserts that Globe's "failure to provide a reasonable separation agreement and severance pay was contrary to the terms of the April 29, 2009 letter and constitutes breach of contract."   (Compl. ¶ 111).   The language of the Offer Letter is as follows:

> Should you be terminated for any reason other than gross negligence or willful misconduct in the performance of your duties as Vice President of Tax, you will be entitled to continue to receive your gross base salary for six months after the termination date . . . .  **Receipt of this salary continuation will be subject to your execution of a separation agreement that is in a form that is reasonably acceptable to Globe** containing among other things a release from liability.

(Caldwell Cert. Ex. C) (emphasis added).   According to Plaintiff's own deposition testimony, Plaintiff negotiated the foregoing language:

> Q: By the way, based upon your language about the severance, did you negotiate a new severance language?
> A: Yes.
> Q: That was based upon the language that you had supplied?
> A: Yes.
> Q: And you were happy with that language?
> A: Yes.

Q: Did you understand it?
A: Yes.

(Cioni Depo. Tr. at 155:18-156:4).

There is also no dispute that on November 16, 2009, following Plaintiff's termination, Globe provided him with a separation agreement which provided precisely what the Offer Letter prescribed – "his regular base salary of $16,513.85 dollars per month for the six-month period commencing on Payment Commencement Date." (D.E. No. 70-1, Ex. G to Caldwell Cert. ("Caldwell Cert. Ex. G") at 23). In addition, the Offer Letter plainly conditioned Globe's obligation to provide salary continuation upon Plaintiff's execution of a separation agreement that was "reasonably acceptable to Globe," (Caldwell Cert. Ex. C at 14), not "a reasonable separation agreement," as alleged in the Complaint, (Compl. ¶ 111).

The evidence demonstrates that Plaintiff was offered precisely the salary continuation for which he bargained and that Globe, in making this offer, met its obligation under the Offer Letter. Since Plaintiff has failed to present sufficient evidence that the separation agreement offered by Globe violated the Offer Letter, Plaintiff's breach of contract claim on these grounds does not survive summary judgment.

### iii. Breach of Contract Claim based on Globe's Code of Ethics

With respect to the portion of Plaintiff's breach of contract claim based on Globe's Code of Ethics, the Court finds that summary judgment is appropriate. Globe's Code of Ethics provides: "It is the policy of Globe Specialty Metals, Inc. . . . that our business should be conducted at all times according to the highest standards of integrity and honesty." (Compl. ¶ 113). Plaintiff contends that Defendants have breached the Code of Ethics by failing to provide Plaintiff with the true reason or any reason for his termination. (*Id.* ¶¶ 114-115, 117).

First, the Court finds that the language "the highest standards of integrity and honesty" is

too vague to give rise to any contractual obligation or to defeat the presumption of at-will employment. *Compare McCrone v. Acme Mkts*, No. 13-3298, 2014 WL 1227472 (3d Cir. Mar. 25, 2014) (failure of employee manual to designate employees as "at-will" and oral policy of allowing employees to be heard and treated fairly do not create an implied contract), *with Woolley v. Hoffmann-La Roche*, 99 N.J. 284 (1985) (holding that job security provisions in an employee manual described as "definite," "explicit and clear" and providing "a fairly detailed procedure" could be enforceable against an employer). Plaintiff also asserts that Defendants misrepresented the reason for his termination to the NJDUI. (Compl. ¶ 116). However, the Court has already addressed this issue in its prior finding that the same allegation of a misrepresentation to the NJDUI was inadequately supported by the evidence. *See Cioni,* 2013 WL 1844752, at *7. As the terms in the Code of Ethics are too vague to give rise to a contractual obligation, and the factual allegations Plaintiff attempts to rely on have already been dismissed by the Court, summary judgment on this issue is appropriate.

In sum, the Court finds that all three theories asserted by Plaintiff in his breach of contract claim fail as a matter of law. Thus, Defendants are entitled to summary judgment as to Count One. Accordingly, Count One of Plaintiff's Complaint is dismissed.

### b.  Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

"[T]here is an implied covenant of good faith and fair dealing in every contract." *King v. Port Auth.,* 909 F. Supp. 938, 942 (D.N.J. 1995). In that regard, "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005); *see Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 241, 244 (2001); *see also Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420-21 (1997); Restatement (Second) of

Contracts § 205 (1981); 23 Williston on Contracts § 63:22, at 506 (Lord ed. 2002). It is well established that "[t]he covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." *Brunswick Hills Racquet Club, Inc.,* 182 N.J. at 224-25 (quoting *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965)); *see also Wade v. Kessler Institute*, 172 N.J. 327, 340 (2002).

Count Two of the Complaint alleges that Defendants breached the covenant of good faith and fair dealing because Plaintiff was given "no business reason for Defendant's decision not to grant his stock options," and his employment was terminated on grounds other than "willful misconduct, poor performance or negligence." (Compl. ¶¶ 118-123). Defendants argue that Plaintiff cannot make a showing of bad faith because this Court has already held that Kestenbaum did not act outside the scope of his authority or veto the issuance of the stock options to Plaintiff:

> [T]here is no evidence to support Plaintiff's assertions that Kestenbaum acted outside the scope of his employment as the Chairman of the Board of Directors or that he "vetoed" the issuance of the stock options offered to Plaintiff. Plaintiff offers no other evidence regarding the scope of Kestenbaum's authority, nor does Plaintiff provide proof that Kestenbaum actually engaged in any actions that exceeded his authority.

*Cioni*, 2013 WL 1844752, at *9; (Defs.' SJ Mot. Br. at 11). Defendants also point out that Appelbaum believed he had the authority to grant the option, a fact which Plaintiff has not disputed. (Defs.' SJ Mot. Br. at 11). In addition, Defendants contend they are entitled to summary judgment with respect to the claim that Plaintiff was terminated on grounds other than willful misconduct, poor performance or negligence. (*Id.*) According to Defendants, the Court's ruling that Plaintiff was an at-will employee who could be fired at any time for any reason renders these allegations moot. (*Id.*)

In opposition, Plaintiff responds "[i]t is beyond dispute that Plaintiff's discharge was made in bad faith with the purpose of destroying Plaintiff's right to the stock options."   (Pl.'s Opp'n Br. at 25).   However, as Defendants' point out, "plaintiff made no such claim in his Complaint, which identifies completely different facts as constituting a breach of the covenant." (D.E. No. 77, Defendants' Reply Brief in Support of Motion for Summary Judgment ("Defs' Reply Br. for SJ") at 7).   The Court agrees that this novel assertion should be disregarded because "a plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment."   *Warfield v. SEPTA*, 460 F. App'x 127, 132 (3d Cir. 2012); *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008); *Wood v. Main*, No. 05-1448, 2008 WL 3833584, at *5 (D.N.J. Aug. 13, 2008).   Since the Court also agrees that Plaintiff's other contentions under Count Two have already been dismissed in the Prior Opinion, *Cioni,* 2013 WL 1844752, the Court finds that Plaintiff has failed to provide sufficient evidence as to Defendants' bad faith.   Thus, summary judgment is appropriate on this claim and Count Two is dismissed.

### c.  Count Seven: Negligent Misrepresentation

Plaintiff alleges that certain statements by Globe, Appelbaum and Bradley constitute negligent misrepresentation.   (Compl. ¶ 174).   Specifically, Plaintiff alleges that Defendant Applebaum told Plaintiff after the commencement of his employment that "he would shortly receive the option grants as promised" in the Offer Letter.   (Compl. ¶ 40).   He further alleges that Plaintiff "relied upon statements by Defendant Applebaum to his detriment as he resigned from his position at Savient" and "as a result of voluntarily leaving Savient, and accepting employment at Globe, [P]laintiff lost incentive stock options and restricted stock granted by Savient that had not yet vested."   (Compl. ¶¶ 29, 44).

As Defendants point out, tort claims arising from a contractual breach are barred by the "economic loss doctrine," which precludes recovery of "purely economic losses suffered as a result of the defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused *actual physical harm* to a plaintiff or his property." *Pub. Servs. Enter. Group, Inc. v. Phila Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J. 1989) (emphasis added); *see also Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 562 (D.N.J. 2002).  The justification for the doctrine is that "[t]ort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damage that parties have or could have addressed in their agreement." *Bubbles N' Bows, LLC v. Fey Publ'g Co.,* No. 06-5391, 2007 WL 2406980, at *10 (D.N.J. Aug. 20, 2007) (citing *Spring Motors Distrib., Inc. v. Ford Motor Co.*, 98 N.J. 555, 589-90 (1985)).

Here, Count Seven does not allege actual physical harm to Plaintiff's person or property. (*See* Compl. ¶¶ 173-174).  Instead, it is based on the dispute over Plaintiff's employment contract with Defendants and is therefore best resolved using contract principles as they are "generally more appropriate for consequential damage that parties have or could have addressed in their agreement." (*Id.*); *Bubbles N' Bows*, 2007 WL 2406980, at *10.  Accordingly, the Court finds Count Seven is barred by the economic loss doctrine and therefore must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment.  Counts One, Two and Seven of Plaintiff's Complaint are DISMISSED as to all Defendants.  An appropriate Order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**

15